the form of the Merrill Lynch Banking Advantage program ("the MLBA program").  In response, the Reserve Parties submitted a certification made by the Reserve Parties' patent attorney in the March 3, 2009, Information Disclosure Statement ("IDS") in U.S. Patent Application No. 10/071,053, in which the Reserve Parties disclosed two publications about the MLBA program.  The certification stated that "to the knowledge of the undersigned, after making reasonable inquiry, no item of information contained in the [IDS] was known to any individual designated in 37 C.F.R. § 1.56(c) more than three months prior to the filing of the [IDS]."  Bruce Bent II, one of the named inventors of the Reserve Patents and Related Applications, has recently admitted that he was aware of the MLBA program long before the certification, as evidenced by his comments about the program in a November 1, 2000 article in *On Wall Street*, and that the certification was "arguably incorrect."  However, this admission occurred after the issue fee for the '551 patent was paid and the Reserve Parties have declined to take the appropriate and necessary steps to permit the PTO to consider the prior art and the correction.

## The Reserve Parties' Assertion of Its Alleged Patent Rights Against Promontory

141.    Since at least 2006, the Reserve has falsely asserted that Promontory's IND service practices one or more of the Reserve Patents and Related Applications.  Until the fall of 2008, Reserve Management was the entity alleging that Promontory's IND service practices one or more of Reserve's Patents.  However, right after the September 16, 2008 revelation that the Reserve Primary Fund, the Reserve Yield Plus Fund, and an off-shore Reserve fund registered in the British Virgin Islands had all fallen below the $1-a-share net asset value (the "breaking-the-buck events"), and very shortly before the beginning of extensive securities litigation against, and the SEC investigation of, Reserve's management for alleged fraudulent activities, Reserve Management changed its name to Double Rock Corporation.  Then, on October 10, 2008, the

25

newly-renamed Reserve Management formed two wholly-owned entities: Island IP and LIDs Capital. On December 4, 2008, Reserve Management assigned its entire patent portfolio to Island IP. Subsequently, Island IP granted an exclusive license for the Reserve Patents and related patent applications to LIDs Capital, which, in turn, granted a sublicense to the same patents back to Reserve Management.

142.    Upon information and belief, Island IP appears to be nothing more than a patent-holding shell company created to hold Reserve's patents and licenses following the breaking-the-buck events. It is wholly-owned and controlled by Reserve Management. It operates out of the same office building in New York as Reserve Management and the other Reserve entities. It does not appear to have conducted much, if any, business.

143.    The Reserve sent a letter dated May 24, 2006 to Promontory regarding the '231 patent, the application that led to the '286 patent, the '551 patent, and some of the Related Applications. The letter stated that its purpose is "to advise [Promontory] of certain intellectual property rights owned by the Reserve which may be of interest to Promontory in connection with its Promontory Deposit Sweep Service or other FDIC insured money market account processing services." The letter further stated that "[t]he Reserve would be willing to license, on reasonable and competitive rates, its rights in the '231 Patent," the application that led to the '286 patent, the '551 patent, certain other applications, and "the remainder of its patent portfolio." This letter, in seeking to induce Promontory to pay royalties under the '231 patent, failed to disclose that the '231 patent had been surrendered for reissue proceedings two years earlier on the ground that, according to each of the alleged inventors, the '231 claims "cover[ed] more that I had a right to claim."

144.    Promontory responded to the Reserve's May 24, 2006, letter in a letter dated June 30, 2006.  In this letter, Promontory stated, among other things, that it "does not practice The Reserve's claimed invention and does not wish to do so."  Nevertheless, Promontory noted that "[i]f [the Reserve] believes that Promontory for some reason is required to be licensed, [Promontory] would appreciate receiving a detailed explanation of the basis for its belief."  Promontory also pointed out Reserve's failure to disclose the '231 patent reissue proceedings and "raise[d] the question whether [Reserve Management] is subject to a charge of bad faith in the patent's attempted use."  Promontory further noted that the '231 patent and its related applications "appear to employ and describe methods and systems intended to circumvent, if not violate, federal regulatory requirements."

145.    The Reserve's responsive letter dated July 12, 2006, stated that "Promontory's exposure to the published claims of the pending applications has already commenced to the extent it practices such claims and claims commensurate in scope ultimately issue from the U.S. Patent and Trademark Office, as we believe will occur."  Reserve also stated that "the mere fact that a reissue proceeding is pending does not make the '231 Patent worthless" and that "[w]e also cannot guarantee that, [after the reissue proceedings are complete], Reserve Management will still be interested in licensing the Reissue version of the '231 Patent" if Promontory did not take a license under the original version.

146.    In a responsive letter dated July 18, 2006, Promontory reaffirmed that "it has no interest in [the Reserve's deposit sweep] methods or systems."

147.    After learning of the reissue proceedings, Promontory further examined Reserve Management's assertions about its patent "portfolio."  On October 4, 2006, Promontory responded by pointing out that Reserve Management had failed to notify the PTO that the

alleged invention was on sale or in public use more than a year prior to the filing of the application. Specifically, Promontory explained that Reserve Management's registered service mark for its alleged invention—Reserve Insured Deposits®—claimed a first use in commerce of October 9, 1997, more than one year prior to the October 21, 1998 filing date for the '231 patent. Accordingly, the alleged invention was barred under 35 U.S.C. § 102(b).

148.    In a follow-up letter dated October 11, 2006, Promontory informed Reserve Management of additional failures by Reserve Management to disclose its commercial activities, as well as the duty to disclose the information in related applications, such as U.S. Patent Application No. 09/677,535 ("the '535 Application").

149.    On October 17, 2006, instead of making an honest disclosure to the PTO, Reserve Management filed a "correction" to its service mark registration, in which inventor Bruce Bent II *swears forward* that the first use in commerce of the product was actually December 1997, thereby avoiding the Section 102(b) bar date.

150.    Upon seeing the new declaration from Mr. Bent, Promontory wrote to Reserve Management on November 1, 2006, pointing out that the Bent declaration was inconsistent with an attached article that stated, "The Reserve Funds, a pioneer in the money fund industry, began offering its Reserve Insured Deposits in August 1997" – well before the 102(b) bar date and the December 1997 date Mr. Bent was now claiming.

151.    On February 27, 2007, nearly four months after Promontory provided Reserve Management with evidence of the falsity of Mr. Bent's declaration, Reserve Management finally submitted another declaration from Bruce Bent II, informing the PTO that there was an "error" in the October 17, 2006 declaration, and that, in fact, "an advertisement from The Reserve for 'an insured money market account with free, unlimited, no minimum checking' appeared in an

October 1997 issue of MUTUAL FUNDS, and actually was received in libraries in September 1997."

152.     In a letter dated March 2, 2007, the Reserve referred to publications of the application that led to the '286 patent and another application, and the Reserve asserted that Promontory practices the claims of these applications. The letter stated, "We continue to expect that claims commensurate in scope with the claims included in these published applications as well as the prior published applications identified in our earlier correspondence will be issuing in the near future. We believe that [Promontory] should reconsider its current conduct and the irreparable harm such conduct is causing The Reserve through, among other things, the price erosion caused by [Promontory's] pricing practices and [Promontory's] sale of competitive products coming within the scope of these claims."

153.     Promontory responded to the Reserve's March 2, 2007 letter in a letter dated May 1, 2007. In this letter, Promontory urged the Reserve to "proceed with caution with these allegations, as any reasonable investigation will lead to the conclusion that there is no good faith basis for asserting that Promontory's conduct falls within the scope of any valid and enforceable claim." Promontory also observed in this letter that "every claim of The Reserve's pending applications that the PTO has examined currently stands rejected."

154.     Most recently, in a letter to Promontory's counsel dated March 10, 2009, the Reserve Parties reiterated their allegation that Promontory was wrongly using the purported inventions claimed in the '231 patent, the application for the '286 patent, and the '551 patent, as well as the pending Related Applications, reciting:

> [Y]our June 30, 2006 letter which categorically denied Promontory's use of the claimed invention and incorrectly asserted that the '231 Patent and the pending patent applications "circumvent, if not violate, federal regulatory requirements." Your client, or at least its banking counsel, should have realized that both of these assertions were untrue. [...]

29

Since that time, your client's willful misappropriation of Double Rock's inventions to compete with Double Rock has resulted in substantial harm to Double Rock, including the loss of several clients, and has eroded Double Rock's profits on the products it has been able to sell.

155.    The Reserve Parties have never provided Promontory with any explanation of its assertion that Promontory's IND service practices the Reserve Patents and Related Applications. Moreover, in its assertions of infringement regarding the '231 patent, Reserve has attempted to enforce its patent beyond the limits of what the patent actually claims.

156.    The Reserve's assertions were and are objectively baseless because no reasonable litigant could expect to succeed on a claim that IND infringes any of the Reserve Patents and Applications for at least the following reasons: (a) the IND service does not make withdrawals or transfers from MMDAs using one of the five methods identified in Regulation D, which are required to be used by the Reserve Patents and Related Applications; (b) the Reserve Patents and Related Applications are invalid in light of the Reserve Parties' own deposit sweep service, the prior deposit sweep services of other financial institutions, the printed publications identified herein, and other prior art; (c) the Reserve Patents and Related Applications are invalid under 35 U.S.C. §§ 101 and 112 because the claimed methods and systems are inoperable because they are illegal under the banking laws and regulations; and (d) the Reserve Patents and Related Applications are unenforceable due to inequitable conduct, described more fully below.

### The Reserve's Interference with Promontory's Business Relationships

157.    Since at least 2006, the Reserve has interfered with Promontory's actual and potential business relationships relating to IND, and has attempted to stifle competition by driving Promontory out of the market.  Among other things, the Reserve has made false assertions to Promontory's actual and prospective clients and service providers that IND practices one or more of the Reserve Patents and Applications.

158.   For example, the Reserve has communicated with Linsco/Private Ledger Corporation ("LPL"), Dreyfus Corporation ("Dreyfus"), Oppenheimer & Co., Inc. ("Oppenheimer"), Reich & Tang Asset Management, LLC ("Reich & Tang"), and A.G. Edwards & Sons, Inc. ("A.G. Edwards"). Upon information and belief, at the time the Reserve made each such communication, the Reserve knew or should have known the third party was an actual or prospective client of Promontory's IND service and/or had a business relationship with Promontory relating to IND.

159.   In the Reserve's communications, it has identified some or all of the Reserve Patents and Related Applications, and has asserted or suggested that Promontory's IND service, the use thereof, or the provision of services in relation thereto, practices one or more of the Reserve Patents and Related Applications. The Reserve has further stated to some of these third parties that liability for patent infringement on the part of the third party may have already commenced. Some of the communications have invited the recipient to commence a business relationship with the Reserve for the provision of deposit sweep services.

160.   For example, on July 17, 2007, in a letter to Dreyfus, Reserve warned that "Dreyfus may be liable as a patent infringer for damages accrued from the date of our first correspondence, even prior to the issuance of the patent claims." In effort to exclude Promontory from the market, Reserve further stated that "[t]o the extent that Dreyfus has no vested interest in using Promontory Interfinancial Network, LLC's services, we encourage Dreyfus to reconsider its choice of vendor and examine the high quality products and services that The Reserve can provide."

161.   Other examples of the Reserve's threats against Promontory's clients and prospective clients include letters to Oppenheimer and Reich & Tang, both on September 5,

2007, in which the Reserve touted its '231 patent, asked both companies to "carefully consider" their continued use of the Promontory system in view of the Reserve's "portfolio of patent applications," and referring to each company as a "patent infringer."

162.     As part of its attempts to enforce the '231 patent by threatening Promontory's clients and prospective clients, the Reserve has repeatedly asserted that its patent covers services that are beyond the scope of what the patent actually claims.

163.     These false and misleading statements to Promontory's clients, prospective clients, and service providers have harmed Promontory by, among other things, causing it to lose A.G. Edwards' and other potential clients' deposit sweep business, incur expenses to repair these business relationships, consummate business transactions, correct misimpressions caused by the false statements, and restore the goodwill associated with its IND service.

164.     Even since the Reserve initially filed its lawsuits against Promontory and others in this District, the Reserve has continued to engage in exclusionary conduct by reaching out to Promontory's clients and prospective clients and making false statements to them regarding Promontory's alleged infringement of the Reserve's patents and the scope of the Reserve's deposit sweep products and services.  In doing so, Reserve has driven customers away from Promontory.

165.     In making false and misleading statements to Promontory's clients, prospective clients, and service providers, the Reserve has attempted to exclude Promontory and others from the market for deposit sweep services and stifle competition in the deposit sweep industry.

### The Reserve's False and Misleading Statements in the Marketplace

166.     The Reserve has, on several occasions, made statements in the marketplace, such as those contained in press releases, that misrepresent the scope of technology purportedly covered by its patents, and has made false statements regarding its products.  For example, as set

out more fully below, in press releases heralding the '286 and '551 patents being issued to Island IP, the Reserve made numerous statements that falsely overstate the scope of technology covered by these two patents.

167.   In press releases dated March 30, 2009 and April 14, 2009, the Reserve falsely claimed that it "invented the first FDIC-insured sweep program over a decade ago," even though it knew that Merrill Lynch has offered deposit sweep services since at least 1983.

168.   Also in the March 30, 2009 press release, in touting the '286 patent, the Reserve claimed that: the '286 patent "is related to the FDIC-insured sweep technology that Double Rock pioneered in late 1997," and made the following claims about its technology:

> "This is a very significant day for us," said John Drahzal, Managing Director of LIDs Capital LLC, a wholly owned subsidiary of Double Rock that will utilize the newly issued patent and offer its Liquid Insured Deposits[SM] program to brokerage clients. "We have been creating value for our brokerage clients since we invented the first FDIC-insured sweep program over a decade ago.  Receiving this patent for our unique multi-bank tiering functionality is a fitting reward for innovation for which we are extremely proud."

> The Liquid Insured Deposits[SM] program enables brokerage clients to have up to $2.5 million of their cash holdings insured by the FDIC through one convenient account.  It also enables broker-dealers, clearing firms and their correspondents to offer tiered interest rates.  The ability to offer tiered interest rates enables broker-dealers to reward customers based on total assets under management instead of simply cash balances.  The structure enables flexibility and discretion in determining rates paid, recognizing the profitability of an account.

> "Our clients recognize the importance of offering an FDIC-insured sweep with a tiering option.  Having been issued the patent reinforces our leadership in this space and the strength of the service that we provide our partners and ultimately their clients," Drahzal added.

169.   In a related press release regarding the '286 patent dated March 24, 2009, the Reserve's own counsel was quoted as stating, "We are very pleased that Island IP has been issued the patent on the Insured Deposits Program."  The March 24 press release also made

claims regarding Double Rock's "Insured Deposits Program" that were nearly identical to those made in the March 30 press release regarding the "Liquid Insured Deposits$^{SM}$ program."

170.    The Reserve's statements in its March 24 and 30 press releases are false and misleading because they overstate the scope of the technology covered by the '286 patent.

171.    In its April 14, 2009 press release, which touted the '551 patent, the Reserve claimed that "[t]he '551 patent is related to the Insured Deposits Program sweep technology that Double Rock pioneered in 1997," and made the following claims about its technology:

> "We have been creating value for the brokerage industry since we invented the first FDIC-insured sweep program over a decade ago," said John Drahzal, Managing Director of LIDs Capital LLC, a wholly owned subsidiary of Double Rock. "Receiving this patent clearly demonstrates our leadership in this space and reinforces the strength of our Liquid Insured DepositsSM program that supports our partners and their clients."

> The Liquid Insured Deposits program enables brokerage clients to have up to $2.5 million of their cash holdings insured by the FDIC through one convenient account. The '551 patent comes on the heels of Double Rock's Patent 7,509,286 (the "'286 Patent"), which was granted on March 24, 2009. The '286 Patent, "Systems and Methods for Money Fund Banking, with Flexible Interest Allocation", is related to the technology that enables brokers to offer tiered interest rates within the insured sweep offering.

> Drahzal adds, "FDIC-insured sweeps will undoubtedly be the favored sweep option of the future. They are appropriate for clients seeking safety, which has been paramount given the market environment, and it helps our partners to be more competitive in what they offer their end clients. Having been awarded the patents clearly strengthens our offering for the hundreds of thousands of investors it has served over the years."

172.    In a related press release regarding the '551 patent dated April 15, 2009, the Reserve's own counsel was quoted as stating, "We are pleased that Island IP has been granted the '551 patent. This in conjunction with the '286 patent underscores Double Rock's innovation and contribution to the financial services industry." The April 15 press release also made claims regarding Double Rock's "Insured Deposits Program" that were identical to those made in the April 14 press release regarding the "Liquid Insured Deposits$^{SM}$ program."

34

173.    The Reserve's statements in its April 14 and 15 press releases are false and misleading because they overstate the scope of the technology covered by the '551 patent.

174.    In its March 24 and April 15 press releases, the Reserve also noted the various lawsuits it has filed in this Court "seeking to enforce" the '286 patent and the '551 patent.

175.    In making false and misleading statements in the marketplace, the Reserve has attempted to exclude Promontory and others from the market and stifle competition in the deposit sweep industry.

## COUNTERCLAIMS

### COUNT I

### Declaratory Judgment of Non-Infringement of the '231 Patent

176.    The allegations contained in paragraphs numbered 90 through 175 are incorporated by reference herein with the same force and effect as if set forth in full below.

177.    Promontory does not infringe, directly or indirectly, any claim of the '231 patent.

178.    An actual and justiciable controversy exists between Promontory and the Reserve Parties as to whether Promontory infringes any claim of the '231 patent.  This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

179.    Pursuant to 28 U.S.C. §§ 2201 and 2202, Promontory is entitled to a declaratory judgment that it does not infringe any claim of the '231 patent, and any other relief that the Court deems necessary or proper.

180.    This is an exceptional case under 35 U.S.C. § 285, entitling Promontory to an award of its attorneys' fees incurred in connection with this action.

## COUNT II

### Declaratory Judgment of Invalidity of the '231 Patent

181.   The allegations contained in paragraphs numbered 90 through 180 are incorporated by reference herein with the same force and effect as if set forth in full below.

182.   Each and every claim of the '231 patent is invalid under one or more of the provisions of Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 135.

183.   An actual and justiciable controversy exists between Promontory and the Reserve Parties as to whether each claim of the '231 patent is invalid.  This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

184.   Pursuant to 28 U.S.C. §§ 2201 and 2202, Promontory is entitled to a declaratory judgment that each claim of the '231 patent is invalid, and any other relief that the Court deems necessary or proper.

185.   This is an exceptional case under 35 U.S.C. § 285, entitling Promontory to an award of its attorneys' fees incurred in connection with this action.

## COUNT III

### Declaratory Judgment of Unenforceability of the '231 Patent

186.   The allegations contained in paragraphs numbered 90 through 185 are incorporated by reference herein with the same force and effect as if set forth in full below.

187.   The '231 patent is unenforceable because one or more persons involved in the prosecution of the application that led to the '231 patent or applications related to the '231 patent committed inequitable conduct.  Upon information and belief, with the intent to deceive the PTO, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties breached the duty of candor, good faith, and honesty in prosecuting these

36

applications by submitting false or misleading information, misrepresenting information, or failing to disclose information material to the patentability of the claimed inventions.

188.   Upon information and belief, during the prosecution of the application that led to the '231 patent, the Reserve, the named inventors, or attorneys, agents or representatives of the Reserve, misrepresented or failed to disclose to the PTO material information about the Reserve Insured Deposits service.  Upon information and belief, the Reserve Insured Deposits service was on sale and/or in public use more than one year prior to the date of the application that resulted in the '231 patent, or the Reserve Insured Deposits service otherwise constitutes prior art with respect to the '231 patent under 35 U.S.C. § 102.  The Reserve has asserted that its Reserve Insured Deposits service embodies one or more claims of the '231 patent, and, for at least this reason, information about the service was material to the patentability of one or more of the claims of the application.  Upon information and belief, the Reserve, the named inventors, or attorneys, agents or representatives of the Reserve misrepresented or failed to disclose material information about the Reserve Insured Deposits service with the intent to deceive the PTO.  This constitutes inequitable conduct and renders the '231 patent unenforceable.

189.   Upon information and belief, during the prosecution of the application that led to the '231 patent, the Reserve, the named inventors, or attorneys, agents or representatives of the Reserve misrepresented or failed to disclose material information to the PTO about the Original 1983 CMA/ISA Service.  The Original 1983 CMA/ISA Service was on sale and/or in public use more than one year prior to the date of the application that resulted in the '231 patent, and information about the service was material to the patentability of one or more of the claims of the application.  Upon information and belief, with the intent to deceive the PTO, the Reserve, the named inventors, or attorneys, agents or representatives of the Reserve were aware of material

information about the Original 1983 CMA/ISA Service during the prosecution of the application that resulted in the '231 patent and misrepresented or failed to disclose material information about the Original 1983 CMA/ISA Service.  This constitutes inequitable conduct and renders the '231 patent unenforceable.

190.    Upon information and belief, during the prosecution of the application that led to the '231 patent, the Reserve, the named inventors, or attorneys, agents or representatives of the Reserve failed to disclose certain printed publications describing deposit sweep services, including without limitation:  a letter from William W. Wiles, Secretary of the Federal Reserve Board, dated June 22, 1983; a letter from Michael Bradfield, General Counsel of the Federal Reserve Board, dated November 16, 1984; and letters from Oliver I. Ireland, Associate General Counsel of the Federal Reserve Board, dated June 22, 1988, February 7, 1995, August 1, 1995, August 30, 1995, and October 18, 1996.  Each of these printed publications was material to the patentability of one or more of the claims of the application that resulted in the '231 patent. Upon information and belief, with the intent to deceive the PTO, the Reserve, the named inventors, or attorneys, agents or representatives of the Reserve were aware of each of these printed publications during the prosecution of the application and failed to disclose the publications.  This constitutes inequitable conduct and renders the '231 patent unenforceable.

191.    Upon information and belief, but for the Reserve's intentional deception, the PTO would not have issued the '231 patent.

192.    An actual and justiciable controversy exists between Promontory and the Reserve Parties as to whether the '231 patent is unenforceable.  This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

193.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Promontory is entitled to a declaratory judgment that the '231 patent is unenforceable, and any other relief that the Court deems necessary or proper.

194.     This is an exceptional case under 35 U.S.C. § 285, entitling Promontory to an award of its attorneys' fees incurred in connection with this action.

## COUNT IV

### Declaratory Judgment of Non-Infringement of the '286 Patent

195.     The allegations contained in paragraphs numbered 90 through 194 are incorporated by reference herein with the same force and effect as if set forth in full below.

196.     Promontory does not infringe, directly or indirectly, any claim of the '286 patent.

197.     An actual and justiciable controversy exists between Promontory and the Reserve Parties as to whether Promontory infringes any claim of the '286 patent.  This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

198.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Promontory is entitled to a declaratory judgment that it does not infringe any claim of the '286 patent, and any other relief that the Court deems necessary or proper.

199.     This is an exceptional case under 35 U.S.C. § 285, entitling Promontory to an award of its attorneys' fees incurred in connection with this action.

## COUNT V

### Declaratory Judgment of Invalidity of the '286 Patent

200.     The allegations contained in paragraphs numbered 90 through 199 are incorporated by reference herein with the same force and effect as if set forth in full below.

201.    Each and every claim of the '286 patent is invalid under one or more of the provisions of Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 135.

202.    An actual and justiciable controversy exists between Promontory and the Reserve Parties as to whether each claim of the '286 patent is invalid.  This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

203.    Pursuant to 28 U.S.C. §§ 2201 and 2202, Promontory is entitled to a declaratory judgment that each claim of the '286 patent is invalid, and any other relief that the Court deems necessary or proper.

204.    This is an exceptional case under 35 U.S.C. § 285, entitling Promontory to an award of its attorneys' fees incurred in connection with this action.

## COUNT VI

### Declaratory Judgment of Unenforceability of the '286 Patent

205.    The allegations contained in paragraphs numbered 90 through 204 are incorporated by reference herein with the same force and effect as if set forth in full below.

206.    The '286 patent is unenforceable because one or more persons involved in the prosecution of the application that led to the '286 patent or applications related to the '286 patent committed inequitable conduct.  Upon information and belief, with the intent to deceive the PTO, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties breached the duty of candor, good faith, and honesty in prosecuting these applications by submitting false or misleading information, misrepresenting information, or failing to disclose information material to the patentability of the claimed inventions.

207.    Upon information and belief, during the prosecution of the applications that led to the '286 patent, the Reserve Parties, the named inventors, or attorneys, agents or representatives

of the Reserve Parties, misrepresented or failed to disclose to the PTO material information about the Original 1983 CMA/ISA Service. The Original 1983 CMA/ISA Service was on sale and/or in public use more than one year prior to the date of application of the '286 patent, and information about the Original 1983 CMA/ISA Service was material to the patentability of one or more of the claims of the application that resulted in the '286 patent. Upon information and belief, during the prosecution of the application that led to the '286 patent, with the intent to deceive the PTO, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties were aware of material information about the Original 1983 CMAIISA Service and misrepresented or failed to disclose material information about the Original 1983 CMA/ISA Service. This constitutes inequitable conduct and renders the '286 patent unenforceable.

208. Upon information and belief, during the prosecution of the applications that led to the '286 patent, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties misrepresented or failed to disclose to the PTO material information about the 2000 CMA 2.0 Service. The 2000 CMA 2.0 Service was on sale and/or in public use, and described in printed publications, before the alleged invention of the '286 patent or otherwise constitutes prior art under 35 U.S.C. § 102, and information about the service was material to the patentability of one or more of the claims of the application that resulted in the '286 patent. Upon information and belief, during the prosecution of the application that led to the '286 patent, with the intent to deceive the PTO, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties were aware of material information about the 2000 CMA 2.0 Service and misrepresented or failed to disclose material information about the 2000

CMA 2.0 Service. This constitutes inequitable conduct and renders the '286 patent unenforceable.

209. Upon information and belief, during the prosecution of the applications that led to the '286 patent, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties misrepresented or failed to disclose to the PTO material information about the MLBA program. The MBLA program was on sale and/or in public use, and described in printed publications, before the alleged invention of the '286 patent or otherwise constitutes prior art under 35 U.S.C. § 102, and information about the service was material to the patentability of one or more of the claims of the application that resulted in the '286 patent. Upon information and belief, during the prosecution of the application that led to the '286 patent, with the intent to deceive the PTO, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties were aware of material information about the MLBA program and misrepresented or failed to disclose material information about the MLBA program. This constitutes inequitable conduct and renders the '286 patent unenforceable.

210. Upon information and belief, during the prosecution of the applications that led to the '286 patent, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties failed to disclose, or made misrepresentations about, certain printed publications describing deposit sweep services, including without limitation: a letter from William W. Wiles, Secretary of the Federal Reserve Board, dated June 22, 1983; a letter from Michael Bradfield, General Counsel of the Federal Reserve Board, dated November 16, 1984; and letters from Oliver I. Ireland, Associate General Counsel of the Federal Reserve Board, dated June 22, 1988, February 7, 1995, August 1, 1995, August 30, 1995, and October 18, 1996. Each of these printed publications was material to the patentability of one or more of the claims

of the application that resulted in the '286 patent.  Upon information and belief, during the

prosecution of the application that led to the '286 patent, with the intent to deceive the PTO, the

Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve

Parties were aware of each of these printed publications and failed to disclose, or made

misrepresentations about, the publications.  This constitutes inequitable conduct and renders the

'286 patent unenforceable.

211.    Upon information and belief, but for the Reserve's intentional deception, the PTO

would not have issued the '286 patent.

212.    The inequitable conduct committed in connection with the prosecution of the '231

patent also renders the '286 patent unenforceable, because this inequitable conduct relates to the

claims of the '286 patent.

213.    An actual and justiciable controversy exists between Promontory and the Reserve

Parties as to whether each claim of the '286 patent is unenforceable.  This controversy is of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

214.    Pursuant to 28 U.S.C. §§ 2201 and 2202, Promontory is entitled to a declaratory

judgment that each claim of the '286 patent is unenforceable, and any other relief that the Court

deems necessary or proper.

215.    This is an exceptional case under 35 U.S.C. § 285, entitling Promontory to an

award of its attorneys' fees incurred in connection with this action.

## COUNT VII

### Declaratory Judgment of Non-Infringement of the '551 Patent

216.    The allegations contained in paragraphs numbered 90 through 215 are

incorporated by reference herein with the same force and effect as if set forth in full below.

217.    Promontory does not infringe, directly or indirectly, any valid and enforceable claim of the '551 patent.

218.    An actual and justiciable controversy exists between Promontory and the Reserve Parties as to whether Promontory infringes any valid and enforceable claim of the '551 patent. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

219.    Pursuant to 28 U.S.C. §§ 2201 and 2202, Promontory is entitled to a declaratory judgment that it does not infringe any valid and enforceable claim of the '551 patent, and any other relief that the Court deems necessary or proper.

220.    This is an exceptional case under 35 U.S.C. § 285, entitling Promontory to an award of its attorney's fees incurred in connection with this action.

## COUNT VIII

## Declaratory Judgment of Invalidity of the '551 Patent

221.    The allegations contained in paragraphs numbered 90 through 220 are incorporated by reference herein with the same force and effect as if set forth in full below.

222.    Each and every claim of the '551 patent is invalid under one or more of the provisions of Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 135.

223.    An actual and justiciable controversy exists between Promontory and the Reserve Parties as to whether each claim of the '551 patent is invalid.  This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

224.    Pursuant to 28 U.S.C. §§ 2201 and 2202, Promontory is entitled to a declaratory judgment that each claim of the '551 patent is invalid, and any other relief that the Court deems necessary or proper.

44

225.    This is an exceptional case under 35 U.S.C. § 285, entitling Promontory to an award of its attorneys' fees incurred in connection with this action.

## COUNT IX

### Declaratory Judgment of Unenforceability of the '551 Patent

226.    The allegations contained in paragraphs numbered 90 through 225 are incorporated by reference herein with the same force and effect as if set forth in full below.

227.    The '551 patent is unenforceable because one or more persons involved in the prosecution of the applications that led to the '551 patent or applications related to the '551 patent committed inequitable conduct. Upon information and belief, with the intent to deceive the PTO, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties breached the duty of candor, good faith, and honesty in prosecuting these applications by submitting false or misleading information, misrepresenting information, or failing to disclose information material to the patentability of the claimed inventions.

228.    Upon information and belief, during the prosecution of one or more applications that led to the '551 patent, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties misrepresented or failed to disclose to the PTO material information about the Original 1983 CMA/ISA Service. The Original 1983 CMA/ISA Service was on sale and/or in public use more than one year prior to the date of application of the '551 patent, and information about the Original 1983 CMA/ISA Service was material to the patentability of one or more of the claims of the application that resulted in the '551 patent. Upon information and belief, during the prosecution of one or more applications that led to the '551 patent, with the intent to deceive the PTO, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties were aware of material information about the Original 1983 CMA/ISA Service and misrepresented or failed to disclose material

45

information about the Original 1983 CMA/ISA Service.  This constitutes inequitable conduct and bears an immediate and necessary relation to the prosecution of the '551 patent, rendering it unenforceable.

229.    Upon information and belief, during the prosecution of one or more applications that led to the '551 patent, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties misrepresented or failed to disclose to the PTO material information about the 2000 CMA 2.0 Service.  The 2000 CMA 2.0 Service was on sale and/or in public use, and described in printed publications, before the alleged invention of the '551 patent or otherwise constitutes prior art under 35 U.S.C. § 102, and information about the service was material to the patentability of one or more of the claims of the application that resulted in the '551 patent.  Upon information and belief, during the prosecution of one or more applications that led to the '551 patent, with the intent to deceive the PTO, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties were aware of material information about the 2000 CMA 2.0 Service and misrepresented or failed to disclose material information about the 2000 CMA 2.0 Service.  This constitutes inequitable conduct and bears an immediate and necessary relation to the prosecution of the '551 patent, rendering it unenforceable.

230.    Upon information and belief, during the prosecution of one or more applications that led to the '551 patent, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties misrepresented or failed to disclose to the PTO material information about the MLBA program.  The MLBA program was on sale and/or in public use, and described in printed publications, before the alleged invention of the '551 patent or otherwise constitutes prior art under 35 U.S.C. § 102, and information about the service was

material to the patentability of one or more of the claims of the application that resulted in the '551 patent. Upon information and belief, during the prosecution of one or more applications that led to the '551 patent, with the intent to deceive the PTO, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties were aware of material information about the MLBA program and misrepresented or failed to disclose material information about the MLBA program. This constitutes inequitable conduct and bears an immediate and necessary relation to the prosecution of the '551 patent, rendering it unenforceable.

231.    Upon information and belief, during the prosecution of one or more applications that led to the '551 patent, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties failed to disclose, or made misrepresentations about, certain printed publications describing deposit sweep services, including without limitation:  a letter from William W. Wiles, Secretary of the Federal Reserve Board, dated June 22, 1983; a letter from Michael Bradfield, General Counsel of the Federal Reserve Board, dated November 16, 1984; and letters from Oliver I. Ireland, Associate General Counsel of the Federal Reserve Board, dated June 22, 1988, February 7, 1995, August 1, 1995, August 30, 1995, and October 18, 1996. Each of these printed publications was material to the patentability of one or more of the claims of the application that resulted in the '551 patent. Upon information and belief, during the prosecution of one or more applications that led to the '551 patent, with the intent to deceive the PTO, the Reserve Parties, the named inventors, or attorneys, agents or representatives of the Reserve Parties were aware of each of these printed publications and failed to disclose, or made misrepresentations about, the publications. This constitutes inequitable conduct and bears an

immediate and necessary relation to the prosecution of the '551 patent, rendering it unenforceable.

232.     Upon information and belief, but for the Reserve's intentional deception, the PTO would not have issued the '551 patent.

233.     The inequitable conduct committed in connection with the prosecution of the '231 patent and the '286 patent also renders the '551 patent unenforceable, because this inequitable conduct has an immediate and necessary relation to the claims of the '551 patent.

234.     An actual and justiciable controversy exists between Promontory and the Reserve Parties as to whether each claim of the '551 patent is unenforceable.  This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

235.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Promontory is entitled to a declaratory judgment that each claim of the '551 patent is unenforceable, and any other relief that the Court deems necessary or proper.

236.     This is an exceptional case under 35 U.S.C. § 285, entitling Promontory to an award of its attorney's fees incurred in connection with this action.

## COUNT X

### Tortious Interference with Business Relations

237.     The allegations contained in paragraphs numbered 90 through 236 are incorporated by reference herein with the same force and effect as if set forth in full below.

238.     The Reserve has provided deposit sweep services that competed with Promontory's IND service.

239.     Promontory has and has had valid present and prospective business relationships or expectancies with third parties relating to the IND service ("IND Third Parties"), including, without limitation, LPL, Drefyus, Oppenheimer, Reich & Tang, and A.G. Edwards.  These

48

business relationships or expectancies bore or bear a probability of future economic benefit to Promontory.

240.    The Reserve knew and continues to know of the existence of Promontory's business relationships and expectancies.

241.    Despite this knowledge, the Reserve has falsely and misleadingly asserted to IND Third Parties that Promontory's IND service practices one or more of the Reserve Patents and Applications.  In addition, the Reserve has falsely and misleadingly asserted to IND Third Parties that they may incur liability for infringement of one or more of these patents, and these applications if and when they issue, by using the IND service or by continuing their business relationships with Promontory.  Upon information and belief, the Reserve made these false assertions with the intent to interfere with Promontory's actual and prospective business relationships and expectancies.

242.    The Reserve's actions were and are without privilege or justification, and the Reserve employed improper methods in its interference, including misrepresentations, deceit, defamation, unfair competition, and baseless assertions of legal rights.  Upon information and belief, the Reserve made the false and misleading assertions described above in bad faith, and the Reserve knew or should have known that such assertions were false and objectively baseless.

243.    The Reserve made these false and misleading assertions to A.G. Edwards in 2007 when Promontory and the Reserve were each in discussions with A.G. Edwards to provide services in support of A.G. Edwards' deposit sweep arrangement.  At the time the Reserve made these false and misleading assertions to A.G. Edwards, the Reserve knew or should have known that Promontory was in discussions with A.G. Edwards.  As a result of the Reserve's false and misleading assertions, A.G. Edwards decided not to use Promontory's services and terminated

discussions with Promontory, and A.G. Edwards selected the Reserve to provide such services. But for the Reserve's conduct, A.G. Edwards would not have rejected Promontory to provide such services.

244.    As a result of the Reserve's conduct, Promontory's goodwill with the IND Third Parties has been diminished, and the Reserve has attempted, and will continue to attempt, to divert business to the Reserve that would have gone to Promontory.  Further, the Reserve's conduct has caused Promontory to lose business, incur expenses to repair business relationships, consummate business transactions, correct misimpressions caused by the false statements, and restore the goodwill associated with the IND service.

245.    The foregoing conduct by the Reserve constitutes tortious interference with Promontory's business relationships and expectancies.

246.    As a consequence of the foregoing, Promontory has suffered and will continue to suffer irreparable harm and loss.  Unless enjoined as requested herein, the Reserve will persist in its wrongful and unlawful activities, and Promontory will be irreparably harmed.

247.    In addition, Promontory has been and continues to be damaged by the Reserve's actions, and Promontory seeks judgment against the Reserve in an amount to be determined at trial.

## COUNT XI

### Unfair Competition under Applicable State Law

248.    The allegations contained in paragraphs numbered 90 through 247 are incorporated by reference herein with the same force and effect as if set forth in full below.

249.    The Reserve has provided deposit sweep services that competed with Promontory's IND service.

250.    The Reserve has falsely and misleadingly asserted in the marketplace for deposit sweep services that the IND service practices one or more of the Reserve Patents and Related Applications.  In addition, the Reserve has falsely and misleadingly asserted to IND customers, users, and service providers that they may incur liability for infringement of one or more of these patents, and these applications if and when they issue, by using the IND service.  The Reserve has also made false statements in the marketplace about its own products, as well as the scope of the technology purportedly covered by its patents by repeatedly asserting that its patents cover services that are beyond the scope of what the patents actually claim.

251.    Upon information and belief, the Reserve made these false assertions regarding Promontory's IND service in bad faith, and the Reserve knew or should have known that such assertions were false and objectively baseless.  Upon information and belief, the Reserve has made these false assertions for the purposes of causing harm to Promontory's business and misappropriating Promontory's labor, skill, expenditures, and commercial advantages.

252.    Upon information and belief, the Reserve's deposit sweep service violates certain banking laws and regulations, including, without limitation, Regulation D.  The Reserve has violated these laws and regulations in order to misappropriate Promontory's labor, skill, expenditures, and commercial advantages.

253.    As a result of the Reserve's conduct, Promontory has lost business and customers to the Reserve.  In addition, Promontory's goodwill in the marketplace for deposit sweep services has been diminished, and the Reserve has attempted, and will continue to attempt, to divert business to the Reserve that would have gone to Promontory.  Further, the Reserve's conduct has caused Promontory to incur expenses to repair business relationships, consummate

business transactions, correct misimpressions caused by the false statements, and restore the goodwill associated with the IND service.

254.    The foregoing conduct of the Reserve constitutes unfair competition.

255.    As a result of the foregoing, Promontory has suffered and will continue to suffer irreparable harm and loss.  Unless enjoined as requested herein, the Reserve will persist in its wrongful and unlawful activities, and Promontory will thereby continue to be irreparably harmed.

256.    In addition, Promontory has been and continues to be damaged by the Reserve's actions.  Promontory seeks judgment in an amount to be determined at trial for compensatory damages.

## COUNT XII

### Unfair Competition in Violation of Section 43(a) of the Lanham Act

257.    The allegations contained in paragraphs numbered 90 through 256 are incorporated by reference herein with the same force and effect as if set forth in full below.

258.    The Reserve has falsely and misleadingly asserted in the marketplace for deposit sweep services that the IND service practices one or more of the Reserve Patents and Related Applications.  In addition, the Reserve has falsely and misleadingly asserted to IND customers, users, and service providers that they may incur liability for infringement of one or more of these patents, and these applications if and when they issue, by using the IND service.  The Reserve has also made false statements in the marketplace about its own products, as well as the scope of the technology purportedly covered by its patents by repeatedly asserting that its patents cover services that are beyond the scope of what the patents actually claim.

259.    The Reserve made these false and misleading statements in interstate commerce and in the course of commercial advertising or promotion, and the statements have been sufficiently disseminated in the market for deposit sweep services.

260.    The Reserve's false and misleading statements are material, and have actually deceived or have a tendency to deceive actual and prospective customers of Promontory's IND service.

261.    Upon information and belief, the Reserve made these false and misleading assertions regarding Promontory's IND service in bad faith, and the Reserve knew or should have known that such assertions were false and objectively baseless.

262.    As a result of the Reserve's conduct, Promontory's goodwill in the marketplace for deposit sweep services has been diminished, and the Reserve has attempted, and will continue to attempt, to divert business from Promontory.  Further, the Reserve's conduct has caused Promontory to lose business, incur expenses to repair business relationships, consummate business transactions, correct misimpressions caused by the false statements, and restore the goodwill associated with the IND service.

263.    The foregoing conduct constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

264.    As a result of the foregoing, Promontory has suffered and will continue to suffer irreparable harm and loss.  Unless enjoined as requested herein, the Reserve will persist in its wrongful and unlawful activities, and Promontory will thereby continue to be irreparably harmed.

265.    In addition, Promontory has been or is likely to be damaged by the Reserve's actions.  Promontory seeks judgment in an amount to be determined at trial for compensatory damages, and the award of attorney's fees and costs pursuant to the Lanham Act.

## DEMAND FOR JUDGMENT

WHEREFORE, Defendant and counterclaim plaintiff Promontory Interfinancial Network, LLC respectfully requests that this Court grant the following relief:

a.    Declare that Promontory does not infringe any valid and enforceable claim of the '231 patent;

b.    Declare that each and every claim of the '231 patent is invalid;

c.    Declare that each and every claim of the '231 patent is unenforceable

d.    Declare that Promontory does not infringe any valid and enforceable claim of the '286 patent;

e.    Declare that each and every claim of the '286 patent is invalid;

f.    Declare that each and every claim of the '286 patent is unenforceable

g.    Declare that Promontory does not infringe any valid and enforceable claim of the '551 patent;

h.    Declare that each and every claim of the '551 patent is invalid;

i.    Declare that each and every claim of the '551 patent is unenforceable;

j.    Award Promontory damages in an amount to be determined at trial to compensate it for all losses suffered as a result of the Reserve's conduct;

k.    Order the Reserve to account for and pay as damages to Promontory all profits and advantages gained from the Reserve's false and misleading assertions regarding Promontory's IND service;

l.    Award Promontory punitive damages in an amount to be proved at trial;

m.    Award Promontory equitable relief, including a preliminary and permanent injunction against the Reserve Parties from (a) enforcing or attempting to enforce the '231 patent, the '286 patent, or the '551 patent against Promontory's customers and service providers, and (b) making false or misleading assertions regarding the IND service or Promontory to actual or prospective customers or service providers of Promontory;

54

n.     Find this case "exceptional" within the meaning of 35 U.S.C. § 285 and
       award Promontory all reasonable attorney's fees, expenses, and costs;

o.     Find this case "exceptional" within the meaning of 15 U.S.C. § 1117(a)
       and award Promontory all reasonable attorney's fees, expenses, and costs;

p.     Award Promontory such reasonable attorney's fees, interest, and costs as
       otherwise provided by law; and

q.     Award such other relief as this Court deems just and proper.


Dated: June 25, 2009                    Respectfully submitted,

                                        Robert D. Gilbert, Esq.
                                        rgilbert@mayerbrown.com
                                        Anthony J. Diana, Esq.
                                        adiana@mayerbrown.com
                                        Mayer Brown LLP
                                        1675 Broadway
                                        New York, New York 10019-5820
                                        Telephone:  (212) 506-2500
                                        Facsimile: (212) 262-1910



                                        Counsel for Defendant and Counterclaim Plaintiff
                                        PROMONTORY INTERFINANCIAL NETWORK, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system.  In addition, I hereby certify that copies of the foregoing have been served, by first-class mail, postage prepaid, and by email, to the following:

Charles R. Macedo, Esq.
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
cmacedo@ARELAW.com

*Counsel For plaintiff and counterclaim defendants Double Rock Corporation, P/K/A Reserve Management Corporation, Island Intellectual Property LLC, LIDs Capital LLC, and Intrasweep LLC*

/s/ _____ Anthony J. Diana, Esq. __
Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820
Telephone:  (212) 506-2500
Facsimile: (212) 262-1910