UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISLAND INTELLECTUAL PROPERTY LLC, LIDS CAPITAL LLC, DOUBLE ROCK CORPORATION, and INTRASWEEP LLC,<br><br>            Plaintiffs,<br><br>  v.<br><br>PROMONTORY INTERFINANCIAL NETWORK, LLC, MBSC SECURITIES CORPORATION, DEUTSCHE BANK AG, DEUTSCHE BANK TRUST COMPANY AMERICAS, and TOTAL BANK SOLUTIONS, LLC,<br><br>            Defendants. | 09-CV-2675 (VM) (AJP)<br><br>ECF Case |

DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................ 4

III. ARGUMENT
    A. The Court Should Order That Mr. Macedo Be Made Subject To The Patent Prosecution Bar That Is Already In Place ............................... 6

    B. Barring Mr. Macedo From Involvement In Patent Prosecution Would Not Unduly Prejudice Reserve ...................................................... 8

IV. CONCLUSION ...................................................................................................... 9

## TABLE OF AUTHORITIES

Page

### CASES

*Chan v. Inuit, Inc.*,
   218 F.R.D. 659 (N.D. Cal. Oct. 20, 2003) .......................................................................... 9

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
   2004 WL 1196965 (D. Del. May 25, 2004) ........................................................................ 8

*Cummins-Allison Corp. v. Glory Ltd.*,
   2003 U.S. Dist. LEXIS 23653 (N.D. Ill. Dec. 31, 2003) ................................................. 8, 9

*Davis v. AT&T Corp.*,
   1998 WL 912012 (W.D.N.Y. Dec. 23, 1998) ...................................................................... 6

*Document Generation Corp. v. Allscripts, LLC*,
   2009 WL 1766096 (E.D. Tex. June 23, 2009) .................................................................... 9

*Flanagan v. Methodist Hosp. of Chi.*,
   1996 WL 374131 (N.D. Ill. June 28, 1996) ........................................................................ 1

*Infosint S.A. v. H. Lundbeck A.S.*,
   2007 WL 1467784 (S.D.N.Y. May 16, 2007) ................................................................. 6, 7

*Interactive Coupon Mktg. Group, Inc. v. H.O.T! Coupons, LLC*,
   1999 WL 618969 (N.D. Ill. Aug. 9, 1999) ...................................................................... 7, 8

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
   50 U.S.P.Q2d 1783, 1998 U.S. Dist. LEXIS 22251 (D. Nev. Apr. 15, 1998) .................... 8

*Molex Inc. v. Wyler*,
   334 F. Supp. 2d 1083 (N.D. Ill. 2004) ................................................................................ 1

*Motorola, Inc. v. Interdigital Tech. Co.*,
   1994 WL 16189689 (D. Del. Dec. 19, 1994) ...................................................................... 8

*Pall Corp. v. Entegris, Inc.*,
   2008 WL 5049961 (E.D.N.Y. Nov. 26, 2008) .................................................................... 6

*In re Papst Licensing, GmbH*,
   2000 WL 554219 (E.D. La. May 4, 2000) .......................................................................... 7

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*,
   254 F.R.D. 568 (N.D. Cal. 2008) ........................................................................................ 7

<u>Page</u>

## STATUTES

Fed. R. Civ. P. 26(c) .................................................................................................................. 1

35 U.S.C. § 122(b)(2)(B)(i) ....................................................................................................... 4

Defendants Promontory Interfinancial Network, LLC, MBSC Securities Corporation, Deutsche Bank AG, Deutsche Bank Trust Company Americas and Total Bank Solutions, LLC (collectively, "Defendants") hereby submit this memorandum of law in support of their motion requesting that the Court reconsider its bench ruling and order that Charles Macedo is barred from playing any role in the prosecution of patents for plaintiffs Island Intellectual Property LLC, LIDS Capital LLC, DoubleRock Corporation and Intrasweep LLC (collectively, "Reserve") relating to the technology at issue during the pendency of this action and for two years thereafter.[1]

## I. **INTRODUCTION**

It is fundamental that an attorney who obtains access to an adversary's confidential information during the course of litigation should not be permitted to make use of that information in prosecuting his own client's patent applications. Courts therefore regularly employ "patent prosecution bars" in these circumstances to eliminate this risk.

Here, the Court has already ordered that a "Chinese wall" be erected between Reserve's litigation counsel and its patent prosecution counsel. But for reasons unexplained, the Court exempted from the order Charles Macedo, a partner at Amster, Rothstein & Ebenstein LLP who is involved in both litigation and prosecution, thereby frustrating the very purpose of the order. Moreover, by exempting Mr. Macedo, the Court has put Mr. Macedo in an untenable position: in this action, Mr. Macedo has sought and will be afforded access to Defendants' most sensitive

---

[1] Although this motion is styled as a motion for reconsideration, the issues are actually being presented here for the first time. Prior to the Case Management Conference, Judge Marrero's clerk advised the parties during a teleconference that the prosecution bar issue would likely be referred to Magistrate Judge Peck for briefing, and that the parties should simply inform Judge Marrero of the existence of the dispute, without setting forth any authority in support of their respective positions. As a result, the parties' Joint Dispute Letter included just one sentence on the issue. Where, as here, the parties have not been afforded an opportunity to brief the issues, courts should not apply the strict standards typically associated with motions for reconsideration, but should instead resolve the issues *de novo*. *See, e.g., Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1085 (N.D. Ill. 2004); *Flanagan v. Methodist Hosp. of Chi.*, 1996 WL 374131, at *1 n.1 (N.D. Ill. June 28, 1996). Accordingly, Defendants submit that this motion should be considered under the "good cause" standard set forth in Rule 26(c).

1

information and will be required to study and thoroughly understand that information in order to zealously represent his clients' interests. When advising Reserve on patent prosecution matters, however, Mr. Macedo will be required to "delete" that information from his brain and act as if he had never learned it. That, of course, is simply not possible, and nearly every court that has considered the issue has so found.

Defendants therefore ask that the patent prosecution bar already ordered in this case be made to apply to Mr. Macedo. In particular, Defendants seek an order barring Mr. Macedo from being involved in any way in the prosecution of patents or patent applications relating to the technology at issue, including by working with Reserve's named patent prosecutors, during the pendency of this litigation and for two years thereafter. It should be emphasized that the need for a patent prosecution bar in a given case is not in any way a reflection on the integrity of the attorney in question. Rather, such relief is necessary for the simple reason that once a person has been exposed to confidential information, that knowledge cannot be expunged from one's mind, even assuming the best of intentions.

While patent prosecution bars are routinely employed in patent cases, such relief is particularly appropriate here. Not only are the parties direct competitors in the highly competitive and increasingly litigious deposit-sweep-services industry, but Defendants possess extraordinarily sensitive information, including confidential source code, research data, inventions, engineering specifications, and other materials containing highly confidential product development information. Once such information is produced in discovery, it is unrealistic to suggest that it will not be used or considered *in any way* in connection with Reserve's patent prosecution strategies. Indeed, courts have consistently recognized that a patent prosecutor's prior exposure to an adversary's confidential information will almost inevitably result in some

degree of tainting of the patent prosecution process, even assuming that the prosecutor acts in good faith.

The need for a patent prosecution bar is further underscored by Mr. Macedo's heavy involvement in Reserve's prosecution efforts. To date, Mr. Macedo has personally appeared for Reserve before the United States Patent and Trademark Office ("PTO") on at least 14 separate occasions in connection with patent applications covering deposit-sweep services. It would be grossly unfair to Defendants to permit Mr. Macedo to continue advising Reserve on patent prosecution matters after having previously been exposed to Defendants' confidential information; and as noted, it would also put Mr. Macedo in an untenable position.

At the same time, barring Mr. Macedo from involvement in Reserve's patent prosecution would not unduly prejudice Reserve. That is because, notwithstanding Mr. Macedo's involvement in patent prosecution, Reserve uses a completely separate firm—Foley & Lardner LLP ("Foley")—as its patent prosecution counsel of record. Indeed, Foley has 22 attorneys authorized to act on Reserve's behalf at the PTO. Conversely, no member of Mr. Macedo's law firm is authorized to represent Reserve before the PTO in patent matters (which is perhaps why Mr. Macedo has told the PTO, when he has appeared for Reserve at numerous examiner interviews, that he is doing so as Reserve's "in-house counsel"). Thus, barring Mr. Macedo from further involvement in patent prosecution will have no effect on Reserve's continued ability to prosecute its alleged patents with its counsel of choice; the only effect will be to ensure that such process proceeds without the risk of Defendants' confidential information being unnecessarily jeopardized.

3

## II.   FACTUAL BACKGROUND[2]

The parties are direct competitors in the deposit-sweep-services industry. Promontory Interfinancial Network, LLC ("Promontory") provides technology to broker-dealers that allows brokers-dealers to sweep funds in multiple banks, which permits broker-dealers to offer their customers access to additional FDIC insurance.[3] Deutsche Bank Trust Company Americas offers, and Total Bank Solutions, LLC operates, a program that allows banks and broker-dealers to sweep funds in multiple deposit banks with extended FDIC insurance.[4]

All of the Defendants possess highly confidential information that is currently being sought in discovery by Reserve. *See, e.g.*, Reserve's First Set of Document Requests, Nos. 1, 6, 8, 13, 19, 24, and 29. Such confidential information includes, but is not limited to, source code, engineering specifications, and other materials containing highly sensitive product development information.

Reserve is also in the deposit-sweep-services business. Over the past three years, Mr. Macedo has been involved in advising Reserve and its named patent prosecutors on the form and scope of Reserve's patent applications relating to this technology. Moreover, on at least 14 occasions,[5] Mr. Macedo participated in and argued on behalf of Reserve as "in-house counsel" at examiner interviews with the PTO. *See, e.g.*, U.S. Patent Application No. 10/411,650 (now the

---

[2] Because Local Civil Rule 6.3 prohibits the filing of declarations in connection with a motion for reconsideration absent Court authorization, Defendants have not submitted a declaration to substantiate the facts alleged herein. To the extent, however, that such a declaration would be helpful to the Court, Defendants would gladly provide one.

[3] MBSC Securities Corporation merely refers clients to Promontory. It does not provide the technology at issue and is not otherwise connected to this dispute.

[4] Defendant Deutsche Bank AG is not involved with such program and is not a relevant party in this action.

[5] Reserve has at least 19 directly related patent applications still pending before the PTO. Although patent applications are typically open to the public after 18 months, Reserve has invoked a special procedure to ensure that sixteen of these patent applications are handled in secret. *See* 35 U.S.C. § 122 (b)(2)(B)(i). Therefore, Defendants have no way of knowing what is being done in those secret patent applications. It would be simple and likely undetectable to modify the claims of those pending applications ever so slightly in view of information learned in litigation.

'286 Patent), Applicant Amendment (Nov. 4, 2008). The most recent of these examiner interviews occurred in April 2009, one month after the initiation of this litigation. *See* U.S. Reissue Application No. 10/825,440 Amendment & Interview Summary at 11 (May 12, 2009).

But despite such heavy involvement in patent prosecution efforts, Mr. Macedo does *not* formally act as a patent prosecutor for Reserve. In fact, he does not have the authority to prosecute patents on behalf of Reserve—he is not listed as one of Reserve's patent prosecutors on its Power of Attorney filed with the PTO. Nor has he signed any formal papers or submissions on behalf of Reserve to the PTO of which Defendants are aware. Reserve's longtime patent prosecution counsel at Foley performs those duties, and has 22 attorneys specifically authorized to prosecute patents on Reserve's behalf.

Because it would be improper for Mr. Macedo to continue advising Reserve on patent prosecution matters after having previously been exposed to Defendants' confidential information, Defendants informed Reserve that Defendants could not agree to a protective order unless it included a bar on Mr. Macedo's patent prosecution activities with respect to the technology at issue. Reserve countered that such a bar was not necessary. The parties therefore agreed to raise the dispute during the August 19, 2009 Case Management Conference before Judge Marrero. During that Conference, Judge Marrero referred this and other disputes to Magistrate Judge Peck, who commenced a case management conference with the parties later that same day.

Apparently recognizing the need for a patent prosecution bar, the Court ordered that a "Chinese wall" be implemented separating Reserve's patent prosecution and litigation counsel, but exempted Mr. Macedo from that order. Dkt. No. 46, 08/19/09 Hr'g Tr. at 37. The Court's

5

basis for exempting Mr. Macedo was that it did not wish to "bar[] a lawyer from earning a living." *Id.* at 39.

Defendants now respectfully request that the Court reconsider that ruling and hold that Mr. Macedo is barred from having any involvement in the prosecution of patents or patent applications relating to the technology at issue during the pendency of this litigation and for two years thereafter.

### III. ARGUMENT

#### A. The Court Should Order That Mr. Macedo Be Made Subject To The Patent Prosecution Bar That Is Already In Place

It is well settled that an attorney who has obtained access to an adversary's confidential information during the course of litigation should not be permitted to make use of that information in prosecuting his own client's patent applications. *See, e.g., Infosint S.A. v. H. Lundbeck A.S.*, 2007 WL 1467784, at *4 (S.D.N.Y. May 16, 2007) (even though he did not personally prosecute any patents, the mere fact that outside litigation counsel was "involved in his firm's prosecution of the patent, at least to some degree" required that he be barred from receiving any highly confidential information in discovery); *Davis v. AT&T Corp.*, 1998 WL 912012, at *3 (W.D.N.Y. Dec. 23, 1998) ("Allowing plaintiff access to this valuable, proprietary information without limiting his ability to apply for patents for a reasonable length of time would create an unwarranted risk of disclosure, as well as a heightened risk of irreparable harm to defendants' competitive business concerns."); *Pall Corp. v. Entegris, Inc.*, 2008 WL 5049961, at *6 n.5 (E.D.N.Y. Nov. 26, 2008) ("It is well recognized that where related patents are being

6

prosecuted and litigated simultaneously, a party may obtain strategic advantage by using information from the litigation in the patent prosecution.") (internal citations omitted).[6]

This Court's decision in *Infosint* is particularly instructive. There, the outside counsel's prosecution role was at best tenuous: he had not personally prosecuted any patents or appeared before the PTO, but merely was "involved in his firm's prosecution of the patent, at least to some degree." 2007 WL 1467784, at *4. Nevertheless, even this limited prosecution role warranted a complete ban on the outside counsel viewing any highly confidential documents: "While Infosint's desire to have its trusted counsel involved in the litigation is understandable, Lundbeck's desire to keep its proprietary information protected is a superior interest." *Id.* at *5.

Here, by comparison, even though Mr. Macedo has been far more intimately involved in Reserve's patent prosecution efforts (indeed, he has appeared before the PTO on at least 14 separate occasions), this motion does not seek the same relief of barring him from accessing confidential information produced in discovery, but merely from being involved in prosecuting patents and patent applications covering the same technology for a limited period of time. This modest relief is entirely appropriate and necessary, and as in *Infosint*, is not in any way dependent on a showing that Mr. Macedo would be anything but ethical in discharging his professional responsibilities. *See id.* ("The Court does not believe that Dragotti would be anything but ethical in his dealings with the information, but the opportunity for accidental

---

[6] Courts outside this Circuit have likewise consistently so held. *See, e.g., Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 579 (N.D. Cal. 2008) ("because Gross is currently involved in prosecuting continuation applications of the patents-in-suit, the court finds it unrealistic to expect Gross to be able to wholly compartmentalize his knowledge of Wells Fargo's confidential information and not let it influence his current and ongoing prosecution duties to Phoenix."); *In re Papst Licensing, GmbH*, 2000 WL 554219, at *4 (E.D. La. May 4, 2000) (ordering patent prosecution bar because "[c]ounsel's ability to file new claims in existing and pending patents based on confidential information discovered during the course of this litigation poses an unacceptable opportunity for inadvertent disclosure and misuse"); *Interactive Coupon Mktg. Group, Inc. v. H.O.T! Coupons, LLC*, 1999 WL 618969, at *4 (N.D. Ill. Aug. 9, 1999) (ordering that "all of plaintiff's attorneys who are privy to confidential information obtained from defendant in discovery shall not participate in the prosecution of any patent application relating to the subject matter of the patents in suit").

disclosure or subconscious influencing of actions or advice is too great."). Indeed, courts have universally recognized that, even assuming the best of intentions, prior exposure to an adversary's confidential information will almost inevitably result in some degree of tainting of the patent prosecution process.[7] The relief sought by Defendants is therefore necessary to protect the integrity of their confidential information.

### B. Barring Mr. Macedo From Involvement In Patent Prosecution Would Not Unduly Prejudice Reserve

Barring Mr. Macedo from involvement in patent prosecution would not unduly prejudice Reserve. As noted, Reserve uses a separate firm—Foley—as its patent prosecution counsel. Whereas Foley has 22 attorneys authorized to act on Reserve's behalf at the PTO, not a single member of Mr. Macedo's law firm is so authorized. Accordingly, barring Mr. Macedo from further involvement in patent prosecution will cause little, if any, prejudice to Reserve.[8]

Moreover, Promontory's proposed prosecution bar is limited in scope and length. The restriction would apply to patent applications only within the same subject matter as the patents-in-suit. Courts have widely accepted this type of prosecution bar. *See, e.g, Interactive Coupon*, 1999 WL 618969, at *4 (barring prosecution "of any patent application for plaintiff relating to the subject matter of the patents in suit"); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, 2004 WL 1196965, at *3 (D. Del. May 25, 2004) (same); *Cummins-Allison Corp. v.*

---

[7] *See, e.g., Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 50 U.S.P.Q2d 1783, 1998 U.S. Dist. LEXIS 22251, at *12 (D. Nev. Apr. 15, 1998) ("No matter how much good faith [counsel] might exercise, it is unrealistic to expect that his knowledge of [the opposing party's] secret technology would or could not influence the nature of his advice to [his/her client]. This is so whether the advice relates to a pending application or a future application."); *Motorola, Inc. v. Interdigital Tech. Co.*, 1994 WL 16189689, at *5 (D. Del. Dec. 19, 1994) (employing patent prosecution bar because "[a]ttorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. . . . The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the . . . attorneys may be.").

[8] The Court expressed a concern during the hearing about "barring a lawyer from earning a living." Dkt. No. 46, 08/19/09 Hr'g Tr. 39:4-5. But Mr. Macedo does not "earn a living" as a patent prosecutor for Reserve—that role belongs to the lawyers at Foley. Thus, any impact from the requested relief on Mr. Macedo's ability to earn a living would be *de minimis*.

8

*Glory Ltd.*, 2003 U.S. Dist. LEXIS 23653, at *3 (N.D. Ill. Dec. 31, 2003) (same). Additionally, the proposed prosecution bar is limited to the pendency of this action and for two years after. This two-year restriction is consistent with other prosecution bars ordered under similar circumstances. *See, e.g., Chan v. Inuit, Inc.*, 218 F.R.D. 659 at 661-62 (N.D. Cal. Oct. 20, 2003) (patent prosecution bar ordered for pendency of action and two years thereafter); *Document Generation Corp. v. Allscripts, LLC*, 2009 WL 1766096, at *1 (E.D. Tex. June 23, 2009) (same).

In sum, the modest relief sought by Defendants is appropriate, narrowly tailored and would not unduly prejudice Reserve. It should therefore be ordered.

## IV.     CONCLUSION

In light of the above, Promontory respectfully asks that the Court bar Mr. Macedo from having any involvement in the prosecution of patents or patent applications relating to the technology at issue, including by working with Reserve's named patent prosecutors, during the pendency of this litigation and for two years thereafter. Alternatively, if the requested relief is not ordered, Defendants respectfully request that Mr. Macedo be barred from accessing Defendants' highly confidential information produced in discovery.

Dated:  September 2, 2009

| SIDLEY AUSTIN LLP | MAYER BROWN LLP |
|---|---|
| By: s/Jeffrey A. Finn<br>Jeffrey A. Finn<br>(admitted pro hac vice)<br>Olivia M. Kim<br>(admitted pro hac vice)<br>Michael Lee<br>(admitted pro hac vice)<br>555 West Fifth Street<br>Suite 4000<br>Los Angeles, CA 90013 | By: s/ Robert D. Gilbert<br>Robert D. Gilbert<br>rgilbert@mayerbrown.com<br>Gregory A. Frantz<br>gfrantz@mayerbrown.com<br>1675 Broadway<br>New York, New York 10019-5820<br>Tel.: (212) 506-2500<br>Fax: (212) 262-1910 |

Telephone: 213-896-6000
Facsimile: 213-896-6600

Asheesh P. Puri
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Counsel for Defendants Deutsche
Bank AG, Deutsche Bank Trust
Company Americas, and Total
Bank Solutions LLC

Counsel for Defendants Promontory
Interfinancial Network, LLC, and MBSC
Securities Corporation

10