UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _9/23/09_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ISLAND INTELLECTUAL PROPERTY LLC,  :
LIDS CAPITAL, LLC, DOUBLE ROCK
CORPORATION & INTRASWEEP LLC,      :

                Plaintiffs,      :

        -against-              :

PROMONTORY INTERFINANCIAL NETWORK,  :
LLC, MBSC SECURITIES CORPORATION,
DEUTSCHE BANK AG, DEUTSCHE BANK     :
TRUST COMPANY AMERICAS & TOTAL BANK
SOLUTIONS LLC,                      :

               Defendants.      :

09 Civ. 2675 (VM) (AJP)

**OPINION AND ORDER**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

       Presently before the Court is defendants' Motion for Reconsideration (Dkt. No. 47)
of this Court's oral order at the August 19, 2009 conference, declining to impose a "patent
prosecution bar" on plaintiff's lead trial counsel, Charles Macedo of Amster, Rothstein & Ebenstein
LLP. (See Dkt. No. 46: 8/19/09 Conf. Tr. at 36-39.)

       The Court has reviewed the parties' briefs and the cases cited therein, and adheres to
its original decision.

H:\OPIN\ISLAND INTELL

The parties agree that the standard for deciding this issue was announced by the Federal Circuit in <u>U.S. Steel Corp.</u> v. <u>United States</u>, 730 F.2d 1465 (Fed. Cir. 1984). <u>U.S. Steel</u>, however, involved access of in-house counsel to highly confidential information. The Federal Circuit stated that the "[d]enial or grant of access . . . cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." <u>U.S. Steel Corp.</u> v. <u>United States</u>, 730 F.2d at 1468. Rather, the Federal Circuit held, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." <u>Id</u>. In a footnote, the Federal Circuit added:

> The parties have referred to involvement in "competitive decisionmaking" as a basis for denial of access. The phrase would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

<u>Id</u>. at 1468 n.3. Subsequent court decisions as to whether to order a patent prosecution bar have focused on this "competitive decisionmaking" standard.

While certain of the cases cited by defendants are easily factually distinguishable, a line of cases relying on the <u>Motorola</u>[1] decision would support defendants' position that a patent prosecution bar is appropriate. These cases, while disclaiming a per se rule, have held that "patent

---

[1]      <u>Motorola Inc.</u> v. <u>Interdigital Tech. Corp.</u>, No. Civ. A. 93-488, 1994 WL 16189689 (D. Del. Dec. 19, 1994).

prosecution is, by its very nature, a form of competitive decision-making because patent attorneys can control the nature and scope of a patented invention," especially "if [patent counseling] relates broadly to the scope of a patented invention." Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A., 254 F.R.D. 568, 580 (N.D. Calif. 2008) (relying on Motorola, citing cases).

 As other decisions have noted, however, the approach of the Motorola line of cases really "amounts to a per se prohibition on the use of [outside] litigation counsel who also prosecute patents." See MedImmune, Inc. v. Centocor, Inc., 271 F. Supp. 2d 762, 773-74 (D. Md. 2003). As the MedImmune court explained, in language equally applicable here:

> Nevertheless, the Court concludes that the Universities' argument amounts to a *per se* prohibition on the use of litigation counsel who also prosecute patents. Other than [attorney] Olstein's status as a patent prosecutor for MedImmune, the Court finds no other indicators that would warrant denying him access to confidential materials. MedImmune's proposed wording for the Protective Order will, therefore, be adopted.
>
>  The Universities correctly note that in-house counsel have already been denied access to confidential materials in this case. They have argued that Olstein, while not an employee of MedImmune, is effectively "in-house" counsel for MedImmune. The record does not support such a characterization nor does it support a conclusion that Olstein is a competitive decision-maker. No evidence has been proffered that Olstein participates in MedImmune's decision-making in relation to competitors in [the] biotechnology field. He does not apparently participate in product design, pricing or marketing. His law firm and MedImmune do not share employees. The Court views Olstein's role as one of patent prosecutor in the typical sense: he takes products that MedImmune has already-developed and brings them before the Patent Office. To adopt the Universities position would inexorably lead to the conclusion that *no* attorney, whether in-house or retained, could prosecute patents for a client while still working as litigation counsel for that client. Such a result would run contrary to Federal Circuit law.

Id. (emphasis added).  A similar result was raised by the court in Sibia Neurosciences, Inc. v. Cadus

Pharm. Corp., No. 96-1231, 1997 U.S. Dist. LEXIS 24130 (S.D. Cal. July 15, 1997), stating:

> As a preliminary matter, there is no evidence that [attorney] DeConti's role with respect to Cadus is in any way comparable to that of an in-house attorney.  He represents numerous biotechnology clients.  Unlike the example referred to by the U.S. Steel court, there is no evidence that DeConti serves on Cadus's board of directors or that his firm has exchanged employees with Cadus.  There is, in short, no evidence that DeConti's relationship to Cadus is anything other than a typical outside counsel relationship.  Although DeConti's status as outside rather than in-house counsel is not dispositive, the Court finds it highly significant in view of the fact that SIBIA has been unable to cite any case other than Motorola in which a court even considered entering a protective order that disqualified outside counsel.
>
> More importantly, the uncontroverted testimony of the attorneys in this case establishes that none of the indicia of involvement in competitive decisionmaking noted by other courts are present here.  DeConti has no involvement in product development, pricing, or market research.  He does not advise Cadus with regard to competitive business decisions.  His role is in the prosecution of patent applications for products that Cadus has already developed.  There is no evidence that he provides Cadus "legal advice on a host of contract, employment, and competitive marketing decisions[;]" that he is involved in product design or development[;] or that he engages in scientific research, sales, or marketing.  Thus, there is no evidence to support a conclusion that this case presents a significant likelihood of inadvertent misuse of confidential information.
>
> . . . .
>
> SIBIA in effect advocates a *per se* rule that counsel who prosecute patents in a particular field should always be subject to disqualification by protective order from viewing confidential information produced in infringement or enforcement litigation concerning patents in that field.  Under this rule, a patent holder or patent applicant would be precluded as a practical matter from retaining its outside patent counsel to defend it in an infringement action, as Cadus has done here, or to prosecute an enforcement action on its behalf[.]  Clearly, none of the cases described above provides support for such a rule; indeed, the Fluke and Glaxo courts specifically rejected the conclusion that in-house patent counsel should be disqualified because they prosecuted patents.  Furthermore, by uniformly permitting access by outside

5

patent counsel, the cases impliedly reject the conclusion that patent prosecution *per se* presents an unacceptable risk of inadvertent disclosure. Finally, there is no factual support for such a conclusion in this case. DeConti testified that as outside patent counsel, he has knowledge of numerous clients' unpublished patent applications and is able to segregate this information.

1997 U.S. Dist. LEXIS 24130 at *21-24 (citations omitted, emphasis added).

Significantly, the Federal Circuit affirmed the district court's <u>Sibia</u> decision, albeit in an unpublished decision. <u>In re Sibia Neurosciences, Inc.</u>, 132 F.3d 50 (table), 1997 WL 688174 (Fed. Cir. Oct. 22, 1997). The Federal Circuit stated that the "district court's order was well reasoned and discussed the relevant facts, rules, and cases. . . ." <u>Id.</u>, 1997 WL 688174 at *3.

The Court emphasizes that here, Mr. Macedo is plaintiffs' lead trial counsel. (<u>See</u> Dkt. No. 46: 8/19/09 Conf. Tr. at 38.) To deprive him of access to defendants' "highly confidential" information would seriously prejudice plaintiff;[2] indeed, defendants do not seek such a restriction. To prevent Mr. Macedo from being involved in plaintiffs' future patent prosecution efforts for many years (defendants seek a patent prosecution bar while this case, including appeals, is pending, plus two years thereafter, <u>see</u> Dkt. No. 48: Defs. Br. at 2) also would highly prejudice plaintiffs (and Mr. Macedo himself, to the extent it would reduce his ability to earn a living). Defendants have not provided sufficient information to the Court to support a prosecution bar for lead trial counsel

---

[2]     Plaintiffs have agreed that other "patent prosecution" counsel at Mr. Macedo's firm will not have access to defendants' highly confidential information. (8/19/09 Conf. Tr. at 37-38.)

6

Macedo;[3/] while disclaiming it, they really are relying on a <u>per se</u> rule to exclude litigation counsel from also engaging in patent prosecution.

## CONCLUSION

Other than by implicitly arguing for a <u>per se</u> rule preventing lead trial counsel Mr. Macedo from also engaging in patent prosecution, defendants have not made a sufficient factual showing as to why Mr. Macedo should be subject to a patent prosecution bar. Particularly here, where the attorney at issue is the lead trial counsel for the adversary, the Court will not impose a patent prosecution bar on him on this record. The Court adheres to its prior decision (<u>see</u> Dkt. No. 46) and denies defendants' Motion for Reconsideration (Dkt. No. 47).

SO ORDERED.

Dated:      New York, New York
            September 23, 2009

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies **by fax & ECF** to:      Charles R. Macedo, Esq.
                                  Anthony J. Diana, Esq.
                                  Asheesh Paul Puri, Esq.
                                  Jeffrey A. Finn, Esq.
                                  Judge Victor Marrero

---

[3/]      The only information before the Court is defendants' statement, in its brief, that "Mr. Macedo has personally appeared for [plaintiffs] before the United States Patent and Trademark Office ('PTO') on at least 14 separate occasions in connection with patent applications covering deposit-sweep services." (Defs. Br. at 3; <u>see also id</u>. at 4-5.)

H:\OPIN\ISLAND INTELL