12151islc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ISLAND INTELLECTUAL PROPERTY
LLC, et al.,

                    Plaintiffs,

            v.                           09-CV-2675 (KBF)

PROMONTORY INTERFINANCIAL
NETWORK, LLC, et al.,

                    Defendants.          Telephone Conference

------------------------------x

                                         New York, N.Y.
                                         January 5, 2012
                                         1:15 p.m.

Before:

                    HON. KATHERINE B. FORREST,

                                         District Judge

                              APPEARANCES

AMSTER, ROTHSTEIN & EBENSTEIN LLC
     Attorneys for Plaintiffs
BY:  CHARLES R. MACEDO, ESQ.
     ANTHONY F. LO CICERO, ESQ.
     BENJAMIN CHARKOW, ESQ.

SIDLEY AUSTIN LLP
     Attorneys for Defendants
BY:  EDWARD G. POPLAWSKI, ESQ.
     OLIVIA M. KIM, ESQ.
     JEFFREY A. FINN, ESQ.

12151islc

```
1            (In chambers)

2            THE COURT:  I now am part of this patent pilot program

3    that the Southern District has started and, you know, you folks

4    may or may not have any additional actions, but I've now got my

5    own individual practice rules on patent cases.  And so

6    hopefully there will be a way of proceeding that will be

7    consistent that we'll adopt here.

8            MR. MACEDO:  Your Honor, I will let you know that we

9    did not use the typical patent rules in this case before Judge

10   Marrero and so it started off on that path, and then it got

11   derailed into a different path.

12           THE COURT:  Yeah, okay.

13           MR. MACEDO:  A little different.  The other thing --

14           THE COURT:  Counsel, let me just announce that we now

15   have a court reporter present, and I am sorry to ask you to do

16   this again, but could you just announce your appearances again.

17   And now that we have a court reporter, since the record won't

18   reflect who's speaking, I'd ask you to introduce yourself as

19   you speak.

20           MR. MACEDO:  Certainly, your Honor.  This is Charles

21   Macedo, M-A-C-E-D-O.  I'm a partner with Amster, Rothstein &

22   Ebenstein LLC.  We are counsel for the plaintiffs.  I have with

23   me my partner Anthony Lo Cicero and our colleague Ben Charkow.

24           MR. POPLAWSKI:  And good afternoon, your Honor.  This

25   is Ed Poplawski here with Sidley Austin.  Also with me are
```

12151islc

1    Olivia Kim and Jeff Finn, and we are counsel for defendants.

2              THE COURT:  Okay.  Thank you.  And as counsel knows,

3    we had started prior to the arrival of the court reporter and I

4    had just discussed the trial date and indicated to counsel that

5    after conferring with Judge Folsom, who has the other action

6    that Mr. Poplawski is involved in, and his colleagues, as well

7    as Judge Marrero and some folks around here, we are going to

8    keep the February 27th trial date in this matter and we will

9    proceed today to set some interim dates.

10             I'd also asked for a chart of claims that remain for

11   the patents that are still at issue and the types of

12   infringement that relate to those claims and patents, and

13   Mr. Macedo has indicated that he will be making a submission on

14   that and plans to simplify in fact further somewhat the

15   plaintiff's claims, and so we'll be getting a submission.

16             And I guess the infringement contentions were not --

17   they were part of the summary judgment papers, but I think,

18   Mr. Macedo, the way it sounds, I won't need a separate

19   submission on the infringement contentions once I get your

20   chart.

21             MR. MACEDO:  I think to the extent you want to know

22   what we're accusing, the charts will do it.  To the extent you

23   want to understand the evidence that we're relying on, that's

24   what the infringement contentions are.  So I'm happy to do

25   whatever your Honor prefers.

12151islc

1          THE COURT:  Well, once we have the chart, I can then

2     go to summary judgment motions and look that up; right?  Or you

3     could put it all together if you'd like, but it sounded a

4     moment ago as if you've already got all that material embodied

5     within the summary judgment papers that you previously

6     submitted.

7          MR. MACEDO:  We do, but because it contains

8     defendant's confidential information, it was filed under seal.

9          THE COURT:  Okay.  Well, that may be one of the

10    reasons why it's not sort of popping up on the docket in an

11    obvious way.  Well, if it's easy for you to sort of cut and

12    paste and put that stuff in, that would be terrific.  What I'm

13    looking for is a way of cutting through this.  It sounds like

14    you've got a way of doing that, so I'd appreciate any help you

15    can give.

16         MR. MACEDO:  I think what we can do, your Honor, which

17    will be a little less than the infringement contention, but

18    what we can do is we can give you a copy of our infringement --

19    our infringement expert report without all the attachments and

20    that if you want, we can also give you defendant's

21    noninfringement expert report.

22         THE COURT:  Okay.  Well, why don't you also,

23    Mr. Macedo -- and let me just remind you to state your name as

24    you speak.

25         MR. MACEDO:  I'm sorry.  I apologize.

12151islc

1        THE COURT:  That's okay.  I've now stated it.  Why

2    don't you also make sure that any submission you make to me,

3    you have conferred with Mr. Poplawski in advance so that I get

4    something where we're not going to have an exchange of letters

5    as to whether or not it's complete or incomplete or changing

6    something somehow.

7        MR. MACEDO:  In fact, your Honor, what I think might

8    be helpful across the board is if we prepare a joint submission

9    with defendants.  In the submission we'll identify the

10   affirmative claims that we're advancing and they can identify

11   the affirmative defenses that they're advancing at trial, so

12   that way you have it all summarized in one place.

13       THE COURT:  Terrific.  Okay.  And based upon that

14   reduced number of patents and claims, it would be useful also,

15   Mr. Macedo, if you could give an estimate, and you,

16   Mr. Poplawski, could respond, because you have some affirmative

17   claims as well, regarding the estimated length of trial.  The

18   trial length I think was based upon an assumption that there

19   might be more at issue than there is going to be at issue, so

20   if you folks, once you've done some of this initial work, could

21   do that, that would be very helpful.

22       MR. MACEDO:  And your Honor, we will include

23   plaintiff's estimate and defendant's can include their

24   estimate.

25       THE COURT:  All right.  Now let's move on to some of

12151islc

1    the pretrial order submissions that we'll need to get us ready

2    for the 27th.  In my individual rules, there's some more

3    detail on this.  They are actually going to be revised and come

4    out next week.

5        Oh, I'm actually told that we've gotten them up now.

6    So there will be some of the detail that I'm talking about now

7    there, but there will also be a transcript of this proceeding,

8    so you'll be able to reread it if you'd like.

9        Let me list the items.  There are the typical items

10   you would expect, but let me list the items that we're going to

11   be talking about and the dates that I'm proposing, and then you

12   folks can tell me why they don't work if they don't.

13       First, I'd like to get a real witness list, with the

14   names of the witnesses, the order of the witnesses, the topics,

15   and the estimated length for the witnesses.  And plaintiff

16   would provide that to defendant, defendant would then look at

17   it, and then it would come to the court.  Defendants are going

18   to have to obviously add their piece in once they've seen

19   what's at issue.

20       Now when I say plaintiff, what I'm talking about is

21   where you bear the affirmative burden of proof on an issue, not

22   just sort of the nominal plaintiff on the caption.  So a real

23   witness list, a real bona fide witness list without a lot of

24   fluff.

25       The second item -- and we'll talk about the dates in a

12151islc

1     minute -- is an exhibit list that will contain any objections

2     that either party has with sufficient detail about the

3     objections and the other side's responses to those objections

4     so that I can make a ruling on the evidence prior to trial, as

5     much as possible.  Some things are going to be subject to

6     connection or there's going to be authenticity left for trial,

7     but for other things I'll be able to resolve some objections

8     pretrial.  So the concept is to get an exhibit list where each

9     side that bears the burden of proof will provide the other side

10    with their proposed exhibits.  They'll either be fine or there

11    will be an objection that will be lodged.  If there's an

12    objection, you'll want to put in more than just one word, like

13    "hearsay."  You'll want to put in why it's hearsay.  The other

14    side will then have an opportunity to say, "Well, here's why

15    it's subject to an exception or why it's not hearsay," and then

16    I'll be able to make a ruling on that.

17              The same thing with respect to deposition designations

18    with one addition, which is to include the complete copies of

19    any depositions from which you are designating as opposed to

20    just the excerpts and to mark in some sort of marker that will

21    copy the portions that you're designating.

22              So for instance, Mr. Macedo, if you're going to

23    designate some deposition testimony, you would mark that, you

24    had it both on a piece of paper, page X, lines A to B, and then

25    Mr. Poplawski and his colleagues would respond.  They may

12151islc

 1  counterdesignate.  They would also mark that on the deposition

 2  transcript itself.  And they may also object.  And if they

 3  object, they would state their reason, you would have an

 4  opportunity to respond to that reason, and then that all would

 5  come to me.  And that is much better than just receiving just

 6  excerpts, because I'll be able to tell the context and maybe

 7  that may help me in making a ruling.  I don't mind, I don't

 8  care, it doesn't bother me one way or the other whether it's

 9  the minuscript or the 26 line.  That's irrelevant.  Whatever's

10  most convenient for you folks.

11          Motions *in limine* also obviously we'll need in

12  advance, including -- and I'd like to talk to you just for a

13  moment about whether there are any *Daubert* motions likely.  If

14  there are documents which are going to be at issue and where

15  you'd normally make a motion *in limine*, if they're otherwise

16  dealt with in the context -- or deposition testimony -- in the

17  context of the other two submissions I just talked about, which

18  is an exhibit list that's got objections and responses and

19  deposition designations with objections and responses, you need

20  not make a separate motion *in limine*.  That can be deemed a

21  motion *in limine* and we'll deal with it in that fashion.  So

22  motions *in limine* would be anticipated to be something that is

23  really different from the exhibits, from the deposition

24  testimony that you'll already have dealt with.

25          Then we obviously would have voir dire and jury

12151islc

1        instructions.

2               Let me see.  I'm just going to sort of go through some

3        of the dates, and these dates, to the court, are dates which

4        I'm pretty attached to.  The dates as between the two of you,

5        I'm going to make some suggestions.  What I want to avoid is a

6        situation where somebody expects to get something on a

7        particular day and doesn't get it, so I do want to have

8        something that is so ordered for the date, but you folks can

9        make suggestions as between the two of you to me as to what

10       dates would work best.  But let me give you what I had

11       outlined, which was for the witness list, that it would come to

12       the court on January 19th, and that means that for the

13       parties bearing the affirmative burden of proof, they would

14       provide it to the other side on the 12th, and the other side

15       would then have an opportunity to add witnesses if they need to

16       add witnesses as a result of whatever they see on the witness

17       list.  For the exhibit list, I have that coming to the court on

18       the 8th of February, so February 8th.  I had preliminary

19       dates which are moveable, but we want to again get something

20       set down.  January 25th and February 1st.  So

21       January 25th for the party proposing the exhibit for which

22       they bear the affirmative burden of proof and then

23       February 1st for the response.  I'm sorry.  Did I say

24       January?  January 25th, February 1st are the two dates,

25       coming to me on February 8th.  Deposition designations is the

12151islc

1      same.

2              Motions *in limine*, if there are going to be *Daubert*

3      motions, it would be terrific to get those by the end of this

4      month, but we could push that by a couple of days if you needed

5      to.  Voir dire on the 6th of February and jury instructions on

6      the 17th of February.  For jury instructions, the voir dire

7      can come in separately.  If you can get joint voir dire, all

8      the better, but I'm not wedded to that.  But for the jury

9      instructions, the two dates I had for the party proposing and

10     then the party responding are February 3rd and

11     February 10th, coming to me on the 17th.

12             So why don't we talk a little bit generally about

13     those dates and whether or not they're going to work.  The

14     reason for putting things behind the 27th is that I am

15     concerned that you folks are going to object to a lot of

16     documents and a lot of deposition designations and I'm going to

17     be making a lot of rulings on those kinds of things, and I

18     don't want to get jammed by having everything come in three

19     days before trial.

20             MR. MACEDO:  Your Honor, your dates are acceptable to

21     plaintiff.

22             MR. POPLAWSKI:  Your Honor, this is Ed Poplawski, and

23     these proposed dates are fine.  May I ask a point of

24     clarification or two?

25             THE COURT:  Absolutely.

12151islc

1          MR. POPLAWSKI:  Does the court entertain jury

2    questionnaires?

3          THE COURT:  I have been talking to people.  You folks

4    know that I am one of the new folks on the bench.  I have been

5    volunteering and have done already some trials, and so I've

6    been talking to a lot of people about the way in which they

7    conduct them, and I have not found them to be useful.  If you

8    folks believe they would be useful, I have found already that I

9    am learning a great deal about opinions that I've held in my

10   short time and have changed.  So we could consider it.  But we

11   wouldn't want anything very long.  The goal for the jury is to

12   get it picked as quickly as possible and as a result, I will

13   use the, I'll tell you, the box method as opposed to something

14   else because it will move -- we've done both -- much more

15   quickly.  And so the biggest issue here is going to be the

16   length of trial, and so that's where we're going to get

17   obviously the most push-back from folks, but I would hope that

18   we can actually be at opening statements by sometime early

19   afternoon of the first day.

20         MR. POPLAWSKI:  One other point, your Honor.  This

21   relates to the trial itself.  In some of the past cases that

22   I've had -- trials, that is -- that the court has permitted

23   transition statements, where you get a certain amount of time

24   then allocated to you, and it can range from anywhere from 10

25   to 15 minutes throughout the trial, and you use a certain

12151islc

1    amount of that, either -- after a witness is done testifying,

2    you make a short transitional statement to the jury.  Does the

3    court have any thoughts in that regard?

4              THE COURT:  Well, let me think about that.  My only

5    concern is, understanding sort of a little bit in advance as to

6    what you're going to do, because it's not going to fit the

7    typical format of an opening or a closing, and so we would want

8    to make sure -- Mr. Poplawski, I know you're very experienced

9    and skilled at this.  We would want to make sure that whatever

10   is said to the jury is within the bounds of what the jury

11   really should be hearing.  That's my only concern.

12             MR. POPLAWSKI:  Understood, your Honor, and I'm sure

13   we'll have an opportunity to dialogue about this in the future.

14             THE COURT:  Well, why don't you confer.  Mr. Macedo,

15   do you have an initial reaction to transition statements?

16             MR. MACEDO:  I think I have to understand a little

17   better what Mr. Poplawski is talking about before I could say

18   yes or no on that.  You know, it depends.  Because obviously we

19   don't want to be in the position where the lawyer is becoming a

20   witness.

21             THE COURT:  Well, and what we don't want to do, I

22   think, also in front of the jury -- but Mr. Poplawski, maybe

23   what you can do is, you know, write a short letter or something

24   to us where you explain what it is you're thinking of, or you

25   and Mr. Macedo may be better off conferring about it and seeing

1    if you can come up with a joint position and then the court

2    will consider it.  What we want to do is avoid having lawyer

3    argument as to what's been heard, you know, "What you have just

4    heard, ladies and gentlemen of the jury, is that claim X means

5    blah, blah, blah," or that, "there's been testimony that claim

6    X means blah, blah, blah and what that translates into in

7    layperson's language is blah, blah, blah."  And, you know, the

8    problem, as you folks know -- you do these cases all the

9    time -- is that a lot of this is going to go over the jury's

10   head, and particularly given the subject matter of these

11   patents and the kind of jury you're likely to get.  These are

12   not people who are going to have FDIC-insured accounts, let

13   alone multiple accounts where they need to have them swept on a

14   regular basis.  I might be wrong, but these are going to be a

15   multitude of novel concepts to these folks.

16        But Mr. Poplawski, within the bounds of what obviously

17   would be deemed acceptable, if you want to confer with

18   Mr. Macedo, I would be absolutely willing to think about and

19   look at whatever you would like to suggest.

20        MR. POPLAWSKI:  Thank you, your Honor.

21        MR. MACEDO:  Your Honor, this is Mr. Macedo again.

22   Could I ask a few clarifying questions?

23        THE COURT:  Sure.

24        MR. MACEDO:  The first clarifying question is, what's

25   your view about deposition testimony of people that will be

12151islc

 1    live witnesses?

 2            THE COURT:  Well, my view is that those people, that

 3    should really be used only in terms of cross-examination.  I

 4    mean, I would hope that you would not take up juror time by

 5    reading in -- I don't even know that you can.  For some you

 6    can.  But I would assume that you just use it as

 7    cross-examination.

 8            MR. MACEDO:  Okay.  The second question is that,

 9    obviously to prove infringement, it's going to depend upon use

10    of deposition testimony and documents we have from defendants

11    as to how their systems work, or -- or the live testimony of

12    defendant's witnesses.  What's your view in terms of plaintiff

13    calling defendant's witnesses as part of our case in chief?

14            THE COURT:  Well, I mean, if you want to call them as

15    a hostile witness, that's your choice.  You can list them on

16    your witness list.  You should list them on your witness list

17    in the order in which you're going to intend to call them.  I

18    don't want to have folks be surprised.  And you're going to

19    have to get Mr. X, Y, or Z here on time on the first day if you

20    plan on calling him or her as one of your, you know, first

21    witnesses.  So, you know, calling a witness in a hostile

22    capacity is obviously fine under the rules.

23            MR. MACEDO:  One of the things that I've been involved

24    with in the past when we've had trials I think before Judge

25    Preska, what she had us do was to keep the plaintiff's case

12151islc

1    open and just to call the witness once on the defendant's side

2    and allow the plaintiff to do their examination at that time.

3    I'm happy to do whatever the court prefers on that.

4         THE COURT:  Well, calling the witness once makes a lot

5    of sense in terms of efficiency as well as I would assume

6    tactically in terms of how you want to get the story told.  So

7    I mean, that makes sense to me.  If somebody says, "Look, I

8    don't want to do my direct of this witness in the context of

9    almost quasicross-examination of my own witness," because you,

10   Mr. Macedo, have called one of Mr. Poplawski's witnesses in a

11   hostile capacity, then I would entertain the concept of having

12   that person called twice if they want to be and are amenable to

13   be bothering twice.  I mean, that's really sort of an issue for

14   you folks to deal with the witness on.  But I would hope that

15   we would try to not use the jury's time inefficiently.  The

16   jury, as you know, will certainly be looking for ways in which

17   you annoy them.  And if they find that you're recalling

18   witnesses and they think, "Why couldn't they have done this

19   before," and it's taken two extra days for them and they hoped

20   they could be back at work, or wherever they're going to go,

21   then that's going to not redound to your own benefit.

22        MR. MACEDO:  So if the parties can work it out that

23   each witness is called only once and that the cases -- that the

24   respective cases are left open with respect to those witnesses,

25   you would not object to that as the trial --

12151islc

1          THE COURT:  Well, let me, I think, put it a little bit

2     differently, which is for the party bearing the burden of

3     proof, let's just assume for just ease of reference here,

4     Mr. Macedo, that obviously, you know, you'll start off, if you

5     got a witness from Mr. Poplawski where you intend to call that

6     witness hostile, you should do so, so that you would not --

7     what I want to make sure is that at the end of your case, your

8     case should rest.

9          MR. MACEDO:  Okay.

10          THE COURT:  It really becomes an issue for

11     Mr. Poplawski in terms of whether or not he wants to do his

12     direct examination in the context of your case.

13          MR. MACEDO:  Okay.  That's very helpful, your Honor.

14          Now just to clarify another point going to the

15     affirmative burden, the way patent law works is, as plaintiffs,

16     it's our burden to prove infringement and damages, and as

17     defendants, it's their burden to prove invalidity.

18          THE COURT:  Which is why I've been talking about who

19     bears the burden of proof on a particular issue, for precisely

20     that reason.

21          MR. MACEDO:  Right.  So from what I understand from

22     what you've described, and I just want clarified, we would come

23     forward with our case on infringement and damages and then

24     close our case when we're done with it, and then defendant will

25     come forward with their noninfringement and invalidity case,

12151islc

1    and then we would present a rebuttal case with respect to the

2    validity issues.

3           THE COURT:  Well, that would be the way I would think

4    it would typically work.

5           Mr. Poplawski, do you have a different vision?

6           MR. POPLAWSKI:  Your Honor, that presents an

7    interesting question.  Mr. Macedo certainly set forth the

8    traditional way of doing that.  We do have counterclaims for

9    declaratory relief, and some courts in the past have allowed a

10   kind of a surrebuttal for the defendants as to validity.  But

11   why don't I confer with Mr. Macedo about this.  I'm inclined to

12   keep it with the traditional way, but I'd like to confer.

13          THE COURT:  Okay.  Why don't you folks confer about

14   that as well and let me know where you come out.  That will

15   obviously show up -- well, no, it probably won't.  If you're

16   going to have rebuttal, it won't show up on your witness list

17   necessarily because you won't know what's going to happen until

18   you see it.  All right.  Well, let me know what's going to

19   happen.

20          MR. MACEDO:  Do you want us to include anticipated

21   rebuttal witnesses?

22          THE COURT:  If you know of them now, yes, and if you

23   can tell based upon who they're calling who you intend to call,

24   then, yes.

25          MR. MACEDO:  Yeah.  I mean, to give you a little

12151islc

1   background on the patent law, when it comes to the invalidity

2   case, we will be recalling our expert who does the infringement

3   to do the validity response.  So we'll know that he'll be in

4   the rebuttal case, for example.

5          THE COURT:  Yes.  Now speaking of experts, let's talk

6   about *Daubert*.

7          MR. MACEDO:  Okay.

8          THE COURT:  Do either of you anticipate at this time

9   making any *Daubert* motions?

10          MR. POPLAWSKI:  Your Honor, defendants do.

11          THE COURT:  Okay.  Mr. Macedo, do you?

12          MR. MACEDO:  I'm not positive yet whether we plan to

13   or not.

14          THE COURT:  Okay.  Well, and that's why I set an

15   earlier date for those, as you may have noticed when I went

16   through it, and these dates, by the way, not only will there be

17   a transcript but there will be an order that will set these

18   forth.  But the decisions on those, depending upon the nature

19   of the testimony, can be somewhat more involved and so that's

20   why January 30th was the date for that.

21          MR. POPLAWSKI:  Your Honor, this is Ed Poplawski.  A

22   point of additional clarification.  I anticipate that any

23   *Daubert* motions that we do file will be combined *Daubert* and

24   motions *in limine* as relates to the expert in question.

25          THE COURT:  Yes.  I would expect so.

12151islc

1          MR. MACEDO:  Your Honor, it is possible that depending

2     upon what motion they intend to make, what we would likely do

3     is a cross-motion with respect to the corresponding type of

4     testimony that their expert is offering, based on that motion.

5          THE COURT:  Well, what we will need to do is to set up

6     a rational briefing schedule, because it's not going to be able

7     to proceed with a normal time frames, obviously.  And so if

8     you're planning on cross-moving, I mean, you're not going to

9     cross-move on the same expert.  You mean, "If they go after our

10    expert, we're going to go after theirs"?

11         MR. MACEDO:  Yeah.  If they're saying our technical

12    expert isn't qualified for reasons X, Y, and Z and those

13    reasons would equally apply to their technical expert, we would

14    say that -- we would want the ability to file a cross-motion

15    based upon the same grounds.

16         THE COURT:  Okay.  Well, let's make sure that we have

17    a little bit of clarity on this, which is that if you believe

18    today, or as you investigate this between now and

19    January 30th, that you have got a reasonable basis or you've

20    got a legal basis to make a *Daubert* motion with respect to a

21    particular expert witness, you will do so affirmatively, and

22    what you're suggesting is that you would essentially oppose a

23    motion and say, "We think that that methodology is perfectly

24    appropriate but if you find it's inappropriate here, then you

25    would have to find that their witness engaged in the same

 1    methodology and therefore theirs should be excluded as well,"

 2    that would be the one time when that might work.

 3         MR. MACEDO:  Perhaps if the defendants can share with

 4    us what their intended *Daubert* --

 5         THE COURT:  I'm not going to ask Mr. Poplawski to do

 6    that right now.  He can if he wants to with you separately.

 7    But I think what I will do is we will include in our order a

 8    briefing schedule that will make a provision for potential

 9    cross-motion, but I would encourage you that if you think

10    you've got a motion that you want to bring, that you bring it,

11    you know, without waiting for the cross-motion opportunity.

12         MR. MACEDO:  Of course, your Honor.  We'll essentially

13    wait --

14         MR. POPLAWSKI:  I would submit that the dates that the

15    court set is fish or cut bait time.  If you have a motion *in*

16    *limine* or a *Daubert* motion to make, you should make it.  And

17    then both parties can confer among themselves as to whether

18    they want to modify or drop their motions afterwards, but to

19    allow cross-motion practice as Mr. Macedo is contemplating I

20    think is prejudicial to the defendant.

21         THE COURT:  Well, you know, the issue -- and I don't

22    disagree with you in some respects, Mr. Poplawski.  The issue,

23    I think, that I'm at least thinking about right now is, if it

24    were the case that there was a methodology that was used by

25    both experts, by two experts, one for each side, first of all,

1    I would think that it would be tactically not a good choice to

2    make a motion against the other side's expert if they use that

3    methodology as failing under *Daubert* if you know your own

4    expert has used that methodology, so it's sort of hard to

5    imagine.  But let's imagine that that tactical decision is made

6    and you move against the methodology of Mr. Macedo's witness.

7    Your person has used exactly the same methodology and so they

8    meet on all fours.  There is a point that if one fails, they

9    should both fail, and the failure to make a motion in advance

10   shouldn't preclude that.  That might be something which the

11   court could deal with *sua sponte*.  Let me think about it, and

12   it will either show up on the briefing schedule as an

13   opportunity for cross-motions or it won't, which is the fish or

14   cut bait version, Mr. Poplawski, that you have mentioned.

15              MR. POPLAWSKI:  Thank you, your Honor.

16              MR. MACEDO:  Thank you, your Honor.

17              THE COURT:  All right.

18              MR. MACEDO:  Your Honor, do you need any requests or

19   suggestions as to number of jurors from counsel?

20              THE COURT:  Well, you know, what I had thought we

21   would do was go with 14.  We may end up going with even an

22   extra juror because of the length of the trial.  I'd like to

23   see how long you think this trial is going to be.  The problem

24   is that you've got, you know, obviously the two factors that

25   are most difficult working against you.  You've got a patent

12151islc

1    trial and you've got a long patent trial, and those are both

2    unsavory things for the juror pool here in Manhattan.  Have you

3    folks had experience where you've found a magic number?

4            MR. MACEDO:  Well, I'm just thinking of Judge

5    Marrero's order by comparison, his individual practice.  He was

6    suggesting that you could have as few as six jurors deliberate,

7    with a total of eight on the panel.

8            THE COURT:  No.  I think we're going to certainly go

9    with twelve as our grouping, as our initial grouping, with some

10   additionals.

11           MR. MACEDO:  And does it require unanimity or

12   majority?

13           THE COURT:  No, it will require unanimity.

14           MR. MACEDO:  Okay.

15           MR. POPLAWSKI:  Your Honor, while we're on that topic,

16   I suppose I should ask, is it contemplated that the --

17           THE COURT:  I'm sorry.  You cut out for one second.

18           MR. POPLAWSKI:  Are you going to have -- if a juror is

19   in the box, does that juror get to be involved in deliberation?

20           THE COURT:  If the juror is in the box?

21           MR. POPLAWSKI:  Yes.  If you've got 12 jurors, are

22   they all going to be involved in the deliberations?

23           THE COURT:  Yes.

24           MR. POPLAWSKI:  They'll all make it through trial.

25           THE COURT:  Yes.

12151islc

1          MR. MACEDO:  Your Honor, one date you haven't given us

2     is a date of a final pretrial conference in advance of the

3     trial.

4          THE COURT:  Yes, I've got that date.  I had my deputy

5     hand me a date.

6          February 21st at 4:30.  Now you will be receiving in

7     advance various rulings on various things, depending upon what

8     you give me, and I don't think at this point that we'll have

9     oral argument on many of these issues -- for instance, the

10    *Daubert* or the evidentiary objections -- unless we need it.  If

11    it turns out that there's a particular issue that, you know, I

12    believe there needs to be oral argument on, then we'll have it.

13    But otherwise, you'll start getting some rulings.

14         MR. MACEDO:  I'm sorry, your Honor.  What time did you

15    say on February 21st?

16         THE COURT:  4:30.

17         MR. MACEDO:  4:30?

18         THE COURT:  Yeah.  And all of these dates and that

19    time will all be reflected in an order that will pop up on ECF.

20         MR. MACEDO:  Your Honor, there is one thing that Judge

21    Marrero did leave open, docket entry 221, Special Master

22    Martens' report and recommendation with respect to the last

23    summary judgment motion that defendants filed, and it hasn't

24    yet been adopted because the time hasn't expired for defendants

25    to put in objections on that one, so I just wanted to let your

12151islc

1    Honor be aware that that is out there and that that order will

2    need to be ruled on.

3              THE COURT:  Okay.

4              MR. POPLAWSKI:  Your Honor, this is Ed Poplawski, and

5    we have apprised plaintiff's counsel we're going to be filing

6    our objections on January 9th.

7              THE COURT:  All right.  Well, then when those come in,

8    I'll, you know, take a look at your objections and we'll

9    proceed from there.

10             MR. MACEDO:  Your Honor, with respect to the special

11   master's rulings in the past, the procedure that Judge Marrero

12   had instituted was for defendants to put in their objections

13   and only if he needed anything from plaintiffs to respond to

14   the objections where he might not otherwise adopt the order did

15   he ask us to submit a response.

16             THE COURT:  You know, if you don't feel like you want

17   to respond, that's fine.  If you feel like you want to respond

18   and you've got something to say, then you should let us know

19   immediately, because I may take action, and if you feel like

20   you haven't had an opportunity to be heard, then in terms of at

21   least paper submission, then you should let us know.  But if

22   there's anything you want to say, then e-mail the clerk and all

23   parties.

24             MR. MACEDO:  Well, I think that, based upon what

25   you're saying, we'll want an opportunity to respond to whatever

25

1    objections they put in then.

2          THE COURT:  Well, you know, for instance, let's assume

3    for the moment that Mr. Poplawski puts in objections that I

4    find to be quite persuasive and I don't feel like I need

5    anything from you because I have found them to be very

6    persuasive and I personally don't think I needed to hear from

7    you.  You would be, I think, quite annoyed if I then don't

8    adopt something that was perhaps in your favor with the special

9    master and I end up reversing that.

10         MR. MACEDO:  Absolutely, your Honor.  What the intent

11   I think of the procedure Judge Marrero had implemented was that

12   he already has advised us previously that he had read the

13   report and recommendation and intended to adopt it but wanted

14   to give defendants the opportunity to preserve any objections

15   they had with respect to the report and recommendation and

16   therefore he allowed -- he actually directed the parties to

17   meet and confer and have defendants file as quickly as possible

18   any objections they had about -- to adopt the report and

19   recommendation, and to the extent that any of the objections

20   that defendant had actually rang a bell, then he would have

21   provided plaintiff an opportunity to respond to them.

22         THE COURT:  Well, I don't know if it's a good thing or

23   a bad thing, but it is certainly the way it works.  When a case

24   is transferred, I get to change some of the procedures.  And I

25   have also read the special master's reports that have come

12151islc

1   down, and what I would suggest is, I do want to make sure that

2   if there are objections that are going to be made that

3   defendants will make them, and that if you've got anything you

4   want to say in response, that we have that also noted for the

5   record.

6           MR. MACEDO:  Okay.  Well, then we will definitely put

7   in responses, so we'll need to ask an appropriate timetable for

8   those.

9           THE COURT:  All right.  I don't know how extensive

10  they're going to be or what the nature of them is going to be,

11  but why don't you, immediately upon receiving them, confer with

12  Mr. Poplawski about a schedule.

13          MR. MACEDO:  Okay, your Honor.

14          MR. POPLAWSKI:  Your Honor, this is Ed Poplawski.  I

15  know that the court's pressed for time.  I'd like to just go

16  back to the trial commencement date for a moment, just to make

17  sure I understand everything correctly.

18          So as I understand it, the court conferred with Judge

19  Folsom, and both trial dates are going to hold at this time,

20  and there's going to be further conferring among the judges

21  themselves.  One of the thoughts in mind is that we start the

22  February 27th trial in this case and then the thought is that

23  I could shuttle to Marshall, Texas for the opening statements

24  there and come back.  I'd just like to point out that I know

25  that there's unintentionally going to be further developments

12151islc

1    here in both cases in terms of winnowing it down, etc., but

2    this is potentially an unworkable situation for me, as I need

3    to not only be present in two places at one time, but there's

4    also at least two team members that would need to be as well,

5    but I understand that the dates hold for now, and we're going

6    to do our best to proceed in that regard.

7            THE COURT:  I hear you, Mr. Poplawski, and what I

8    would say -- and you have I think certainly correctly stated

9    the court's position -- is that because of the number of

10   lawyers who are involved, it is likely that there could be

11   coverage in both places on any particular date, and there's

12   lots of flights from New York to Texas all the time.  So I do

13   understand that it puts you in a very difficult position, but

14   we believe that it is a workable situation at this point in

15   time.

16           MR. POPLAWSKI:  Understood, your Honor.  And just by

17   way of clarification then, there's basically three lawyers in

18   both cases that are the core team -- that's me, Mr. Finn, and

19   Ms. Kim.  The other members of the team have knowledge about

20   certain other aspects, predominantly on the damages side, I

21   would say, so there is a need for at least three of us present

22   in each place.  But I appreciate the court's position and we're

23   going to -- we're going to proceed.

24           THE COURT:  Okay.  Is there anything else that the

25   parties would like to raise or that I can assist with you at

12151islc

1    this time?

2         MR. MACEDO:  Your Honor, there is one potential issue,

3    depending upon what defendants say and the issues that they

4    want to try.  They raised the defense on inequitable conduct

5    which is -- we don't think that they've met their burden on it,

6    but putting that aside, if -- it's an issue that's generally

7    tried before the judge in a bench trial, not before a jury, and

8    inequity is something that the judge would decide, and to the

9    extent that they are pursuing that, we will likely have a

10   motion *in limine* as well as a motion to bifurcate on the issue,

11   and I just wanted to bring that to your Honor's attention.

12        THE COURT:  Okay.  I haven't seen anything in my

13   review of the materials that suggests that the defendants are

14   dropping that.  Mr. Poplawski?

15        MR. POPLAWSKI:  No, your Honor, we're not dropping it

16   at this time, and I think this is all part of the dialogue

17   that's going to go on between the parties on winnowing down the

18   case.

19        THE COURT:  All right.  Well, then I hear that you may

20   have a motion *in limine*, Mr. Macedo, and if you do, you do.

21        MR. MACEDO:  Thank you, your Honor.  I just wanted to

22   bring that to your attention so you're aware of the issue.

23        THE COURT:  Okay.  Thanks.

24        MR. MACEDO:  But we have nothing further at this time

25   and we appreciate the court's assistance in this matter.  Thank

12151islc

1    you.

2              THE COURT:  All right.  Well, then there will be a

3    transcript of this proceeding which you folks can get from the

4    clerk's office if you would like.  The date and times of the

5    various items that we have talked about will be set forth in an

6    order, as I've said, that will show up on ECF.

7              MR. MACEDO:  Thank you, your Honor.

8              THE COURT:  All right.  Thanks, everyone.  Bye-bye.

9                              o0o